NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0614n.06
Filed: August 22, 2006

No. 05-3324

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| HUSSEIN ABDALLAH, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW OF |
| | ) | AN ORDER OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ALBERTO GONZALES, | ) | |
| | ) | |
| Respondent. | ) | |

Before:     BOGGS, Chief Judge; BATCHELDER, Circuit Judge; and BELL, District Judge.*

PER CURIAM. Hussein Abdallah, a native of Lebanon who entered this country in

1991 on a temporary visa and has lived here ever since, petitions for review of the Board of

Immigration Appeals's denial of his applications for asylum, withholding of removal, and relief

under the Convention Against Torture. Abdallah filed two such applications, one in June 1991 and

the other in April 1998. An immigration judge ("IJ") denied his application on January 27, 2004,

finding Abdallah's testimony incredible because key portions of it were omitted from his written

application, and because Abdallah did not provide readily-available corroboration. On February 18,

2005, the Board of Immigration Appeals ("BIA") affirmed that decision without opinion. This

---

*The Honorable Robert Holmes Bell, Chief United States District Judge for the Western
District of Michigan, sitting by designation.

timely petition for review followed, pursuant to 8 U.S.C. § 1252(b). We deny the petition for review.

I

Abdallah's testimony to the IJ was as follows: his family is from southern Lebanon, near the Israeli border. They had long been involved in smuggling activities, and in recent decades had begun to smuggle Jews into Israel. When the Israelis started a militia in the area, known as the Southern Lebanon Army ("SLA"), several members of the Abdallah family joined it. As a result of these activities, the Abdallah family became known as traitors, and were persecuted by other militias and groups such as Hezbollah and the Amal Movement. When the Israelis subsequently disbanded the SLA, many Abdallahs fled to Israel in order to avoid trial by the Lebanese government. Many Abdallahs who did not flee have been killed or have disappeared; one has been arrested and jailed.

Petitioner testified that he did not want to become politically involved, and so refused overtures from both the SLA and Hezbollah. As a result, he received threatening letters and phone calls, which culminated in his house being burnt down. In 1979, he moved to Beirut to try to escape the trouble. Even in the capital he was not free from recruitment efforts. While living there in 1986, he was shot at; petitioner speculates without evidence that this shooting was an attack by one of his many political enemies. Petitioner fled Lebanon as soon as he could after this shooting incident, and moved to Ivory Coast. There he started a business and lived for about five years, until January 1991,

when racial tensions led to his business (and other Lebanese-owned establishments) being burnt down.

Petitioner testified that he then briefly returned to Lebanon, only to find that Hezbollah and other militant groups retained significant influence there. When their efforts to recruit him resumed, he left for the United States in April 1991, after only about three months in Lebanon. His mother, brother, and one sister had previously moved here legally; he came to "visit" them but has lived here ever since. His other sister remains in Lebanon, and she tells Abdallah that the situation there–including the danger to people of his last name–is unchanged.

The IJ found that Abdallah failed to carry his burden of proof of past persecution because Abdallah failed to offer available corroboration and because he had omitted vital portions of his story from his application for asylum. Specifically, the IJ found that corroboration of the pattern of past persecution suffered by Abdallah would have been available from (1) his mother and brother, who were in Lebanon at the time of Abdallah's claimed persecution but who now reside legally in the United States, and (2) the other members of the Abdallah family who petitioner claims fled to Israel in order to avoid persecution. At the hearing, petitioner offered no testimony, letters, or statements of any kind from such individuals. He offered no explanation for this omission.[1]

In finding that Abdallah failed to prove past persecution, the IJ also noted that while Abdallah had testified that his persecution resumed when he returned to Lebanon after living in

---

[1]Abdallah did state that he had never asked his sister in Lebanon to send a letter documenting his troubles, because he assumed that she would be afraid that such a letter would be intercepted by Hezbollah. The IJ apparently accepted this explanation, and did not rely on the lack of a letter from Abdallah's sister in finding against Abdallah.

Ivory Coast, his written application had not mentioned such problems– in fact, did not even state that Abdallah had returned to Lebanon from Ivory Coast before coming to the United States.

II

To be entitled to asylum, an alien must show (1) that he is a 'refugee' and (2) that he "merits a favorable exercise of discretion by the Attorney General." *Mikhailevitch v. INS*, 146 F. 3d 384, 389 (6th Cir. 1998). An alien is a refugee if he is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Koliada v. INS*, 259 F. 3d 482, 486 (6th Cir. 2001) (quoting 8 U.S.C. § 1101(a)(42)(A)). The burden of proving past persecution or a well-founded fear of future persecution is on the alien. *Koliada*, 259 F. 3d at 487. Although the alien's uncorroborated testimony "may be sufficient to sustain the burden of proof," *id.* (quoting 8 C.F.R. § 208.13(a)), this court has held that "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided. . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *Dorosh v. Ashcroft*, 398 F. 3d 379, 382 (6th Cir. 2004). In this case, the IJ found that Abdallah failed to prove past persecution partly because he failed to submit readily-available corroborative testimony from his relatives.

Abdallah argues that application of *Dorosh* to his case violates his due process rights because his hearing took place before *Dorosh* was decided.[2] He relies heavily on precedent from the Ninth

---

[2]As noted above, Abdallah's hearing took place in January 2004; *Dorosh* was decided in December of that year.

Circuit in making this argument. In *Mejia-Paiz v. INS*, 111 F. 3d 720, 723-24 (9th Cir. 1997), that Circuit held that an IJ could base an adverse determination of an asylum applicant's credibility on the applicant's failure to provide readily-available evidence to corroborate his testimony. But in *Sidhu v. INS*, 220 F. 3d 1085, 1091-92, (9th Cir. 2000) the Ninth Circuit held that because the holding of *Mejia-Paiz* was "a clear rule on a legal issue that had previously been unsettled, both under our law and under the BIA's, principles of due process prevent us from holding Petitioner to its evidentiary standard." At the heart of this argument is the notion that an asylum applicant has a due-process right to notice, before his hearing, of the possible grounds on which the IJ might find his testimony incredible. *Ibid.*

Nevertheless, nothing in *Dorosh* indicates that its application was intended to be prospective only, and in fact this court began applying *Dorosh*'s rule only months after the case was decided in December 2004. *See, e.g., Bobryvets v. Gonzales*, 132 F. App'x 602 (6th Cir. 2005) (affirming IJ decision entered in 2002). Indeed, a "fundamental rule of retrospective operation . . . has governed [j]udicial decisions for near a thousand years," and the Constitution has not altered that. *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 95 (1993) (internal quotation marks and citation omitted). This fundamental rule is founded on the principle that "judges 'say what the law is,' rather than 'what the law shall be' as legislatures do." *Salazar-Regino v. Trominski*, 415 F. 3d 436, 449 (5th Cir. 2005). Retrospective application is particularly appropriate for a decision such as *Dorosh*, which simply approved the BIA's pre-existing application of 8 C.F.R. §§ 208.13(a) and 208.16(b). *Dorosh*, 398 F. 3d at 382 (citing *In re S-M-J-*, 21 I&N Dec. 722, 724-26, 1997 WL 80984 (BIA 1997))– an application that was already compatible with the facial meaning of the relevant

regulatory language. 8 C.F.R. § 208.13(a) ("The testimony of the applicant, if credible, *may* be sufficient to sustain the burden of proof without corroboration" (emphasis added)). Regardless of whether his due-process rights were implicated, under such circumstances an asylum applicant should have been on notice that corroboration might be required even of his credible testimony.

III

We now turn to Abdallah's objections to the substance of the IJ's determinations. When, as here, the BIA affirms an IJ's decision without opinion, we review the IJ's opinion directly for abuse of discretion. *Denko v. INS*, 351 F. 3d 717, 723 (6th Cir. 2003). Under this standard, we will reverse an IJ's findings of fact only if "any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4); that is, we will reverse only if the evidence not only supports but also compels a conclusion contrary to that reached below. *Mikhailevitch v. INS*, 146 F. 3d 384, 388 (6th Cir. 1998).

Abdallah objects that even without corroboration, his testimony was sufficiently clear and detailed to warrant a reversal of the IJ's findings. *Dorosh* establishes that an IJ has the discretion to require readily-available corroborative evidence even if an applicant's testimony is credible. Here, the IJ noted that Hezbollah does persecute suspected Israeli spies in Lebanon, but found that Abdallah had not established a particularized risk of such persecution. In support of this finding, the IJ noted that Abdallah's applications for asylum, while very detailed in other respects, completely omitted any mention of an important part of his testimony: his return to

Lebanon from Ivory Coast, and the resumption of his alleged persecutions in his home country, before he departed for the United States. Under these circumstances, it was not an abuse of discretion for the IJ to expect corroboration of Abdallah's claims.

Finally, Abdallah claims that the omissions from his asylum applications should not have counted against him. He asserts that his testimony was simply more detailed than the applications, and that a negative inference from such omissions is inappropriate. This assertion is both factually false and substantively inadequate. Abdallah's 1998 asylum application describes the reasons he left Lebanon; all the persecutions he states are prior to his flight to Ivory Coast. When asked whether he returned to Lebanon after fleeing "for the reasons you have described" (Part D, Question 5 of the Application for Asylum), Abdallah responded in the negative. His testimony at trial– that he returned to Lebanon from Ivory Coast and suffered further persecution there after his return– directly contradicts his application in this respect. But even if this had been a simple omission, with no contradiction involved, Abdallah would still have failed to state, in his otherwise quite detailed application, the events and circumstances that immediately caused his flight to the United States. On review, we cannot say that no reasonable adjudicator would have been suspicious of such an omission. Therefore, the IJ did not abuse her discretion in holding that because of this omission and the lack of corroboration of his story, Abdallah failed to establish his status as a refugee.

IV

Abdallah also appeal the denial of his petitions for withholding of removal and relief under the Convention Against Torture.  8 C.F.R. § 208.16(b) requires that, in order to qualify for withholding of removal, an alien must show that his life or freedom would be threatened in his home country because of his membership in a protected class.  This requires a showing that either (1) his life or freedom was so threatened in the past, or (2) it is "more likely than not" that he would suffer persecution if he returned.  8 C.F.R. § 208.16(b)(1)(i), (b)(2).  Because this burden is higher than that for asylum, Abdallah's failure to qualify for asylum means that he is also not entitled to withholding of removal.  *See Singh v. Ashcroft*, 398 F. 3d 396, 401.  Finally, Abdallah raises no new arguments on appeal relevant to his application for relief under the Convention Against Torture; he has not shown that it is "more likely than not," 8 C.F.R.§ 208.16(c)(2),  that he will be tortured if he is returned to Lebanon.

V

For the foregoing reasons, we deny the petition for review of the order of the BIA.  We note, however, that conditions in Lebanon have changed dramatically since this case was argued.  8 U.S.C. §1229a(c)(7)(C)(ii) provides that "changed country conditions arising in the country of nationality" allow an applicant to move for reopening of his asylum proceedings without regard to the normal deadline for such a motion.