NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0507n.06

No. 08-3924

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 21, 2009**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| BASSEM SLIEMAN BASSAM, | ) | |
| SAMIRA AJAMI, FATEMA BASSAM, | ) | |
| and HASSAN BASSAM, | ) | |
| | ) | |
| Petitioners, | ) | ON APPEAL FROM THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| v. | ) | |
| | ) | |
| ERIC H. HOLDER, JR., | ) | OPINION |
| | ) | |
| Respondent. | | |

---

**Before: GILMAN and McKEAGUE, Circuit Judges; and SARGUS, District Judge.**[*]

**RONALD LEE GILMAN, Circuit Judge.** Bassem Slieman Bassam is a native and citizen

of Lebanon. He spent much of his childhood in Kuwait, and continued to live and work there as an

adult. Along with his wife and two children, Bassam arrived in the United States as a nonimmigrant

visitor in December 2000. In April 2003, the government served all four members of the family with

Notices to Appear in immigration court, alleging that they had overstayed their visas. Bassam

responded by filing an application for asylum, withholding of removal, and protection under the

Convention Against Torture (CAT). His wife and children were included as derivative applicants.

An Immigration Judge (IJ) reviewed Bassam's application in March 2007. After concluding

that Bassam had failed to establish eligibility for any of the three forms of relief he sought, the IJ

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

ordered Bassam and his family members removed to Lebanon. Bassam appealed the IJ's decision

to the Board of Immigration Appeals (BIA), which affirmed the decision. He now petitions this

court for review. For the reasons set forth below, we **DENY** Bassam's petition.

## I. BACKGROUND

Bassam was the only witness at his hearing before the IJ. Because the IJ determined that

Bassam testified credibly, we will accept his testimony as true. The testimony established that

Bassam was born in southern Lebanon in 1965, but that he and his family moved to Kuwait in 1975

because of the civil war then occurring in Lebanon. Bassam's father obtained work at the Kuwait

National Petroleum Company.

In 1980, a war broke out between Iraq and Iran. Kuwait supported Iraq in the war. Shia

Muslims (including Bassam and his family and other Lebanese citizens) were viewed with suspicion

in Kuwait because the Kuwaiti government perceived the Shia as supporters of Iran. As a result,

Bassam's father was detained for two weeks in 1985. Kuwaiti security forces arrested him along

with many other Lebanese men two days after an assassination attempt on the Amir of Kuwait. After

Bassam's father was released, all of Bassam's family members were deported to Lebanon.

Bassam himself remained in Kuwait when his family was deported because he had his own

work visa and was employed as a refinery operator by the Kuwait National Petroleum Company.

But Bassam and other Lebanese nationals continued to be perceived with suspicion in Kuwait.

Specifically, Bassam was arrested by Kuwaiti security forces at his place of employment in January

1989. His arrest and subsequent interrogation followed an explosion that had occurred at the refinery

where he worked. The Kuwaiti security forces questioned him about the explosion and about his family history, religion, employment, and whether he belonged to any militia groups. Bassam was detained for four days and then released without charges. Although he was slapped in the face a few times during the interrogation, he did not suffer any physical harm.

Two days after his release, Bassam received a letter notifying him that his contract at the petroleum company had not been renewed. Bassam was unable to find another job in Kuwait. Because his visa was contingent on employment, he returned to Lebanon and remained there for eight or nine months. During his time in Lebanon, he was detained on various occasions for periods of three to four hours while guards performed background checks on him. He testified that he was never beaten or physically harmed, although he again received minor slaps to the face.

Bassam eventually went back to Kuwait on a temporary visa and found work at a catering company. After getting married in Lebanon in 1992, he returned to Kuwait with his wife. The family remained in Kuwait until 2000, with Bassam continuing to work for the catering company. Bassam's daughter Fatema and son Hassan were born in Kuwait in 1995 and 1996, respectively, but both children are citizens of Lebanon.

Bassam visited Lebanon in July 2000. Upon his arrival in Beirut, he was detained by airport security officials for three to four hours. After his release from the airport, he was stopped at a checkpoint and held for two days by Syrian security forces that were then occupying Lebanon. He suffered no physical harm during either detention period. Bassam remained in Beirut for about a month and a half before returning to Kuwait.

Not long thereafter, Bassam's work visa in Kuwait was cancelled. He was fired from his job and told to leave the country. He then obtained visitor visas for himself and his family to travel to the United States. The family left Kuwait on November 30, 2000 and passed through Beirut briefly in transit on that date. They arrived in New York on December 1, 2000. The family has been in the United States since that time, and Bassam and his wife now have two additional children who are U.S. citizens.

Although Bassam feared returning to Lebanon, he did not timely apply for asylum. He testified that he did not file an application because he was unaware that there was a time limit and because he feared that he would be deported if he brought himself to the government's attention. Bassam's fear of returning to Lebanon increased after the World Trade Center attacks on September 11, 2001, but he still did not file an application for asylum. He finally filed his application in August 2004, after he and his family had been served with Notices to Appear that charged them with unlawful presence in the United States.

Since the time of his application, additional unrest in Lebanon has increased Bassam's fear of returning to his country. Specifically, the area in southern Lebanon where he was born was destroyed during the 2006 conflict between Israel and Lebanon. Bassam testified that his entire family now lives in Beirut due to the destruction of their home in the south. No harm has come to any of his family members in Beirut, although they struggle to find work and they live in fear of bombings and other violence related to the ongoing conflict in their country.

After Bassam presented his testimony, the IJ issued an oral decision denying his application for asylum, withholding of removal, and protection under the CAT. The IJ held that none of the

treatment Bassam described rose to the level of past persecution and that, even if Bassam had demonstrated past persecution, he had not presented any evidence suggesting that the treatment was motivated by any of the statutorily protected grounds for asylum and withholding of removal. In addition, the IJ concluded that Bassam's fear of returning to Lebanon was based on the poor conditions there and general civil strife, not on any likelihood that he would be subjected to persecution. Regarding Bassam's application for protection under the CAT, the IJ concluded that Bassam had never been tortured and had not presented any evidence to show a possibility that he would be tortured in the future. The BIA issued a brief order expressing its agreement with the IJ's analysis and conclusions.

Bassam now petitions this court for review of the BIA's decision. He argues that the detentions he experienced in Kuwait and Lebanon amounted to persecution on the basis of his nationality, membership in a social group, and religion. Bassam also argues that his fear of future persecution or torture is reasonable. Finally, he argues that the IJ's failure to include a copy of his passport in the record violated the Due Process Clause of the Fifth Amendment because the BIA was not able to perform a meaningful review of the evidence.

## II. ANALYSIS

### A.     Standard of review

"Because the BIA adopted the IJ's decision with additional commentary, we review the decision of the IJ, as supplemented by the BIA, as the final administrative order." *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). Questions of law involving immigration proceedings are

reviewed de novo. *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). We will not disturb the IJ's factual findings, or a determination that the petitioner failed to establish eligibility for asylum or withholding of removal, if substantial evidence supports such rulings. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (holding that a factfinder's rulings will be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole"). Under this standard, a factual determination of the IJ will not be reversed unless we find "that the evidence not only supports a contrary conclusion, but *compels* it." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (emphasis in original).

**B.    Asylum**

### 1.    *One-year time limit for asylum applications*

Bassam failed to apply for asylum within one year of his arrival in the United States, as required by 8 U.S.C. § 1158 (a)(2)(B). Nonetheless, the IJ gave Bassam the "benefit of the doubt" regarding changed country conditions in Lebanon that might have increased Bassam's fear of returning, *see* § 1158(a)(2)(D) (permitting the Attorney General to excuse the failure to comply with the one-year time limit in light of "changed circumstances"), and proceeded to assess the merits of his application. We will do the same.

### 2.    *Legal framework for asylum*

Under the Immigration and Nationality Act (INA), 8 U.S.C. § 1158(a), the U.S. Attorney General has the discretion to grant asylum to a "refugee." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994). Section 1101(a)(42)(A) of the INA defines a "refugee" as an alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of

persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." An applicant may therefore establish eligibility for asylum by showing that he or she (1) has suffered past persecution, or (2) has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b). The burden is on the applicant to establish that he or she qualifies as a refugee. 8 C.F.R. § 1208.13(a)-(b). If credible, the applicant's testimony "may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a).

A well-founded fear of future persecution "must be both subjectively genuine and objectively reasonable." *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir.1998). That is, the applicant must "actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Perkovic*, 33 F.3d at 620-21 (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987)).

### 3.     *Merits of Bassam's application*

Bassam seeks asylum only from Lebanon—his country of citizenship and the country to which the IJ designated that Bassam, his wife, and his children be removed. No suggestion appears in the record that the government has contemplated removing Bassam and his family to Kuwait. Indeed, Bassam testified that he no longer has any legal basis to enter Kuwait, and he never stated that he fears persecution in that country. The government correctly points out in its brief that Bassam's refugee status must be considered solely with respect to Lebanon—his country of nationality. *See* 8 U.S.C. § 1101(a)(42)(A).

Nonetheless, Bassam presented information about incidents that happened to him in Kuwait as well as in Lebanon, and the IJ discussed his eligibility for asylum from both countries. *See Ouda*

*v. INS*, 324 F.3d 445, 450-51 (6th Cir. 2003) (reviewing the application of a stateless person for asylum from Kuwait—the person's last country of residence—even though the applicant was not eligible to enter Kuwait). To the extent that this was an error by the IJ, we conclude that it was harmless. The treatment that Bassam experienced in Kuwait—a single incident of detention and interrogation—was nearly identical to the treatment he experienced in Lebanon. Analysis of his asylum eligibility would therefore not materially differ between the two countries. But because Bassam applied for asylum only from Lebanon, and the IJ designated his removal to that country, we will review the IJ's decision solely with respect to Lebanon.

Bassam described several incidents in Lebanon where he was detained at checkpoints or in the airport and questioned by authorities. The longest of these detentions occurred in July 2000, when he was detained for two days while background checks were conducted. No other incident of detention lasted longer than a few hours. Bassam does not describe any physical harm that was inflicted on him in Lebanon, with the exception of a few minor slaps that left red marks on his skin for brief periods.

This treatment does not rise to the level of persecution. *See, e.g.*, *Sedrakyan v. Gonzales*, 237 F. App'x 76, 83 (6th Cir. 2007) (noting that generally, "[d]etention . . . in connection with a police investigation do[es] not constitute persecution." (citing *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004))). The facts as Bassam describes them are similar to those in *Mohammed v. Keisler*, 507 F.3d 369, 371-72 (6th Cir. 2007), in which this court concluded that a three-day period of police detention without abuse, together with a single incident where the applicant was slapped and kicked but not

injured, did not rise to the level of persecution. We therefore agree with the IJ's conclusion that Bassam has not shown that he has experienced past persecution in Lebanon.

Bassam has also failed to show that he has a well-founded fear of future persecution. Although he is understandably fearful of returning to his country because of various unfortunate circumstances there, none of the potential difficulties he faces amount to persecution as defined by the INA. Bassam testified that he fears additional lengthy detentions at checkpoints, similar to those that have occurred in the past. But, as explained above, such detention does not rise to the level of persecution. And Bassam conceded at his hearing that, although he believes that officials might detain him more frequently than others because he has lived in Kuwait, inspections at checkpoints are a routine part of life for everyone in Lebanon.

Bassam also stated that work is difficult to find in Lebanon, that his children's education might be frequently interrupted there, and that civilians are not safe in Lebanon because of bombings and ongoing conflict. We do not doubt that these difficulties exist and that Bassam fears them, but they do not qualify him for a grant of asylum. *See, e.g.*, *Pascual v. Mukasey*, 514 F.3d 483, 488 (6th Cir. 2007) (noting that scarce educational and economic opportunities, "regrettable though they are, do not establish a cognizable case of persecution"); *Akhtar v. Gonzales*, 406 F.3d 399, 405 (6th Cir. 2005) (noting that general civil and social strife does not confer eligibility for asylum). In sum, the record does not compel the conclusion that Bassam has a well-founded fear of future persecution.

## C.      Withholding of removal

A petition for withholding of removal is a request that the Attorney General halt removal proceedings if the alien's "life or freedom would be threatened in that country because of the alien's

race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An alien may satisfy his or her burden of proof for withholding of removal by demonstrating past persecution in the country of removal on account of one or more of the aforementioned reasons. 8 C.F.R. § 1208.16(b)(1)(i). This showing triggers a rebuttable presumption that the applicant's life or freedom would be threatened in the future if removed to that country. *Id*.

An applicant may alternatively seek withholding of removal by establishing that "it is more likely than not" that he or she would suffer harm in the future upon removal to the applicant's native country—even if the applicant has not suffered past persecution. 8 C.F.R. § 1208.16(b)(2). This is a more demanding burden of proof than the one employed for evaluating asylum claims, which instead requires that an applicant establish a "well-founded fear of persecution." 8 C.F.R. § 1208.13(b)(2); *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998). Because Bassam has not met the lower burden to establish asylum eligibility, he cannot meet the more stringent standard for withholding of removal. *See Bah v. Gonzales*, 462 F.3d 637, 643 (6th Cir. 2006).

**D.     Protection under the CAT**

To obtain relief under the CAT, Bassam must show that he would "more likely than not" be subjected to torture in Lebanon. *See* 8 C.F.R. § 1208.16(c)(2); *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). The CAT does not require a nexus between the possible torture and any of the five protected grounds for asylum and withholding of removal. *Mapouya v. Gonzales*, 487 F.3d 396, 414 (6th Cir. 2007). But the concept of torture involves more severe treatment than persecution. *See* 8 C.F.R. § 1208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not

include lesser forms of . . . punishment that do not amount to torture."). An applicant who has not demonstrated past persecution or a well-founded fear of future persecution is therefore unable to meet the "more likely than not" burden under the CAT. *Bah*, 462 F.3d at 643. We therefore concur with the IJ's conclusion that Bassam is not eligible for this form of relief.

**E.      Due Process analysis**

Finally, we address Bassam's argument that the IJ's failure to include Bassam's passport in the record of appeal to the BIA amounted to a due process violation. The IJ recognized that Bassam's passport was relevant, and the IJ examined it during the course of the proceedings. But the IJ failed to request a copy of the passport from the government attorney (who had the document in his possession at the hearing) and have it placed in the record.

We are not persuaded by Bassam's argument. The Due Process Clause of the Fifth Amendment requires that aliens in removal proceedings be afforded a full hearing that is fundamentally fair. *See, e.g.*, *Denko v. INS*, 351 F.3d 717, 723-24 (6th Cir. 2003). We are satisfied that the BIA's review of Bassam's application was not hindered by the absence of his passport in the record. All of the relevant facts relating to his passport—primarily the fact of his employment in Kuwait and the dates of his travels between Kuwait and Lebanon—were available in the record of the proceedings before the IJ. And in light of the IJ's finding that Bassam testified credibly, no factual dispute about these matters existed for the BIA's consideration on appeal. We therefore decline to remand the case for consideration of Bassam's passport by the BIA.

## III.  CONCLUSION

For all of the reasons set forth above, we **DENY** Bassam's petition for review.