NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0707n.06

No. 08-4589

**FILED**

**Oct 29, 2009**

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RAZIA SULTANA, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | OPINION |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Before: GILMAN and GRIFFIN, Circuit Judges; and STEEH, District Judge.***

**RONALD LEE GILMAN, Circuit Judge.** Razia Sultana, a 44 year-old woman from

Pakistan, appeals a decision by the Board of Immigration Appeals (BIA) that denied her application

for asylum, withholding of removal, and protection under the United Nation's Convention Against

Torture (CAT). In April 2001, Sultana came to the United States with her then-husband, Farooq

Khan. She seeks asylum based on alleged past persecution as a result of Khan's political activities

in Pakistan. She also claims a fear of future persecution due to those same activities and due to her

alleged membership in the purported social group of unmarried women living in Pakistan without

a male protector. For the reasons set forth below, we **DENY** the petition for review.

## I. BACKGROUND

*The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

## A.    Factual background

Sultana was born in Karachi, Pakistan in January 1965. In 1986, Sultana married Farooq Khan against the wishes of her family, who had arranged for her to marry another man. According to Sultana, her family refused to accept the marriage because it was a "love marriage," resulting in the family abandoning her. Sultana and Khan had four children while living in Pakistan, two boys and two girls.

While living in Karachi with Sultana, Khan was a leader of the Pakistan Muslim League, a secular, moderate political group. He was arrested and held for 15 days in 1999 as a result of his political activities and is currently charged with a political crime in Pakistan. Sultana and Khan, accompanied by one of their daughters, entered the United States in April 2001 on a tourist visa, but stayed beyond the permitted temporary period. Khan filed for asylum and withholding of removal within the one-year deadline, with Sultana and the daughter as derivative applicants. A denial of the application was upheld by the BIA in 2003, but the Sixth Circuit remanded the case in 2005 after holding that the IJ had violated Khan's due process rights by refusing to permit a relevant witness to testify. *Khan v. Gonzales*, 148 F. App'x 303 (6th Cir. 2005).

Sultana and Khan were divorced in June 2004 after Khan began spending all of his time with another woman. As a result of the divorce, Sultana's application was severed from her ex-husband's. Khan's application for withholding of removal was eventually granted in April 2007, with the daughter as a rider. Khan has filed I-730 forms for the remaining three children to come to the United States.

**B.      Procedural history**

In her application, Sultana claimed asylum and withholding of removal based only on her membership in a purported social group. She contended that, as a single woman living in Pakistan without protection from a strong male, she "would be subject to all the evils that befall women." She did not check the box claiming asylum or withholding based on political opinion. In her June 2007 merits hearing before an immigration judge (IJ), however, she presented evidence of past persecution and her fear of future persecution based on her ex-husband's past political activities in Pakistan.

At the end of the hearing, the IJ held that (1) Sultana had not demonstrated past persecution or a well-founded fear of future persecution as a result of her ex-husband's political activities; (2) Sultana had not established that she was a member of the purported social group of single women living in Pakistan without a male protector; and (3) Sultana had not met the "more likely than not" standard of showing that she would be tortured by an entity covered by the CAT if she returned to Pakistan. Sultana appealed to the BIA. In October 2008, the BIA dismissed Sultana's appeal and explicitly agreed with the IJ that she did not fall into the claimed social group and that she had not presented any evidence that anyone in Pakistan would seek to harm her because of her ex-husband's past political activities. Sultana has timely appealed.

**II. ANALYSIS**

**A.      Standard of review**

"Because the BIA adopted the IJ's decision with additional commentary, we review the decision of the IJ, as supplemented by the BIA, as the final administrative order." *Ceraj v. Mukasey*,

511 F.3d 583, 588 (6th Cir. 2007). We review the factual determinations of the IJ under the "substantial evidence" test. *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). Under this standard, we will not reverse a factual determination unless we find "that the evidence not only supports a contrary conclusion, but *compels* it." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (emphasis in original).

**B.      Sultana's alleged persecution as a result of her ex-husband's political activities**

   *1.      Past persecution*

Sultana's first claim for asylum is based on the past persecution that she allegedly suffered as a result of her ex-husband's political activities in Pakistan. An alien who seeks asylum must establish that she meets the definition of a "refugee," which means a person unable or unwilling to return to her country because of past persecution or a "well-founded fear" of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). The burden of proof is on Sultana to establish that she meets this definition. *See id*. § 1158(b)(1)(B)(i).

Both the IJ and the BIA concluded that Sultana had not presented any evidence of past persecution that she allegedly suffered as a result of her ex-husband's activities with the Pakistan Muslim League. Substantial evidence supports this finding. Sultana herself testified that she was never personally threatened or harmed because of Khan's political activities. Although Sultana may have suffered indirectly as a result of threats to Khan and his imprisonment in 1999, the BIA correctly noted that "the harm visited on her husband does not necessarily equate to past persecution

to herself." Sultana provided no specific examples of how *she* suffered as a result of the harm inflicted upon her husband. Indeed, she did not even generally explain how it negatively affected her life.

Persecution "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional," *Lumaj v. Gonzales*, 462 F.3d 574, 577 (6th Cir. 2006) (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993)), and "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty," *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). The record is devoid of any instances of harm suffered by Sultana that meet this definition.

Sultana bases her claim of past persecution on a series of cases that allegedly support a finding of persecution due to "derivative suffering." But the sole Sixth Circuit case cited by Sultana on this issue, *Abay v. Ashcroft*, 368 F.3d 634 (6th Cir. 2004), is distinguishable. In *Abay*, this court held that a mother had established a well-founded fear of *future* persecution based on the likelihood that her daughter would be forced to undergo genital mutilation in Ethiopia. *Id.* at 642. The mother, however, established a fear of future persecution "in her own right" based on her fear of exposing her daughter to permanent harm and of witnessing the pain and suffering of her daughter as a result of a procedure that the mother opposed. *Id.* at 641-42. Moreover, since *Abay*, this court has been clear that persecution of an applicant's family members will not always be determinative of past persecution of the applicant, *Bal v. Gonzales*, 207 F. App'x 627, 630 (6th Cir. 2006), and that "the

overall context of the applicant's situation" must be analyzed, *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005).

Beyond the bare facts that her husband was imprisoned for 15 days in 1999 and that he is currently charged with a political crime in Pakistan, Sultana provided no information about her ex-husband's past persecution. Her testimony thus lacks detail about the severity of persecution that her husband experienced. On this record, her ex-husband's persecution was not severe or lengthy enough to provide the sole support for a finding that Sultana herself suffered past persecution. *See Bal*, 207 F. App'x at 630-31 (holding that although the applicant's family member suffered past persecution, it was not severe enough to support the applicant's claim of past persecution). The finding of the IJ and the BIA that Sultana did not suffer past persecution is thus supported by substantial evidence.

## 2. *Future persecution*

Sultana next claims asylum based on a well-founded fear of future persecution "due to political opinions imputed to her by enemies of her ex-husband." A well-founded fear of future persecution "must be both subjectively genuine and objectively reasonable." *See, e.g.*, *Abay*, 368 F.3d at 637 (quoting *Mikhailevitch*, 146 F.3d at 389)). The IJ's finding that Sultana had established neither the subjective nor objective component of this standard is supported by substantial evidence. First, Sultana presented no evidence that her ex-husband's political opinions would be imputed to her if she were to return to Pakistan. Sultana was not active in the Pakistan Muslim League while living in Pakistan, and she presented no evidence that she has been politically active while living in

the United States or that she plans to be active upon returning to Pakistan. Second, even if she had established that her ex-husband's political opinions would be imputed to her, she failed to demonstrate "reasonably specific information showing a real threat of individual persecution." *See, e.g.*, *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (quoting *Dokic v. INS*, 999 F.2d 539 (6th Cir. 1993)). On this issue, Sultana's only relevant point is that revenge is common in Pakistan:

> Since my ex-husband has political connections, it can happen that . . . his party member, they can kill me. You know, that would take revenge on him. . . . [I]n Pakistan, there is no limit on revenge. . . . It is very common that if you don't listen to this political party people, then they normally abduct and they rape the woman and nobody could lodge even a complaint with police over there.

This testimony is not specific enough to demonstrate that Sultana herself is at risk of persecution.

The fact that Sultana's ex-husband suffered harm in Pakistan is not, without more, sufficient to support her claim of fear of future persecution. "[A]bsent a pattern of persecution tied to the asylum applicant himself or herself, acts of violence against family members do not necessarily demonstrate a well-founded fear of persecution." *Akhtar v. Gonzales*, 406 F.3d 399, 405 (6th Cir. 2005) (quoting *Gebremaria v. Ashcroft*, 378 F.3d 734, 739 (8th Cir. 2004)). The applicant in *Akhtar* claimed a fear of future persecution based on his membership in a political family. Although Akhtar's father had been murdered and his mother wounded due to their political activities, Akhtar himself was apolitical and therefore could not show that the political opinions of his parents would be imputed to him or that he would suffer persecution as a result. This court upheld the BIA's denial of asylum, reasoning: "Although certainly relevant to assessing his status as a refugee, Akhtar

'cannot rely solely on the persecution of [his] family members to qualify for asylum.'" *Id*. at 406 (alterations in original) (quoting *Ciorba v. Ashcroft,* 323 F.3d 539, 545 (7th Cir. 2003)).

The facts of Sultana's case are strikingly similar to those in *Akhtar*. Sultana never assisted her husband in his political activities, and she was never threatened or harmed while her husband was active in the Pakistan Muslim League. None of her family members are currently participating in the organization. And three of Sultana's children, as well as members of her ex-husband's family, continue to live in Pakistan unharmed. In short, there is no objective evidence that anyone in Pakistan would seek to punish or harm Sultana. To the contrary, the evidence suggests that Sultana would not face persecution if she were to return. *See Jing Hu v. Holder*, No. 08-3890, 2009 WL 2189718, at *4-5 (6th Cir. July 22, 2009) (unpublished) (holding that the applicant had not established a well-founded fear of future persecution where she presented no objective evidence that authorities "have any interest in punishing" her and where she provided no evidence that family members remaining in the country were still being persecuted). The finding of the IJ that Sultana failed to establish a well-founded fear of future persecution is thus supported by substantial evidence.

**C.      Sultana's membership in the purported social group of single women in Pakistan without a male protector**

Still another basis for Sultana's claim of asylum is the future persecution that she would allegedly face as a member of the social group of single women living in Pakistan without a male protector. Both the IJ and the BIA found that Sultana "failed to show that she falls into the category claimed." The record on this issue does not compel a contrary conclusion.

To establish the allegation that her family has abandoned her, Sultana primarily relies on a letter that she claims to have received from one of her brothers in Pakistan, stating that the family will "have nothing to do with you." But both the IJ and the BIA found this letter to be unreliable, noting that Sultana could not explain inconsistencies in the spelling of the sender's name nor why it was written in English if Sultana struggles to read English. The IJ also noted inconsistencies between the handwriting in the letter and the handwriting on the envelope, concluding that "[t]he court does not believe that the respondent has demonstrated that this letter is what it purports to be and this is the only crucial evidence or credible evidence indicating that the brothers, who are currently in Pakistan, would not give her assistance."

The IJ was clearly within his authority to analyze the authenticity of the letter. *See, e.g.*, *Selami v. Gonzales*, 423 F.3d 621, 625-26 (6th Cir. 2005) (upholding an adverse credibility determination where the IJ found a newspaper article presented by the applicant to be fraudulent). Given that this was Sultana's primary evidence that her family has abandoned her and that her four brothers in Pakistan would not protect her, her claim that she would be without male protectors in Pakistan is significantly weakened.

Apart from the letter, other evidence suggests that Sultana's family, including her male relatives, has not completely abandoned her and could provide her with protection in Pakistan. Sultana, for example, has received support while living in the United States from her sister who lives with her and from her ex-husband's brother. Sultana's other sister, who currently lives in Pakistan, sent Sultana the death certificates for their parents, thereby suggesting that this sister also continues

to support her. Although Sultana said that she could not live with her sister and the sister's husband in Pakistan due to their financial difficulties, Sultana provided no objective evidence to support such an argument.

Because Sultana's sister living in Pakistan previously provided information pertinent to the case, the IJ reasonably concluded that Sultana should have sought corroborating evidence from her. Sultana's failure to do so hurts her claim that she could not live with her sister and the sister's husband in Pakistan. *See Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) ("'[W]here it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided. . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof.'") (alterations in original) (quoting *In re S-M-J-*, 21 I. & N. Dec. 722, 724-26 (B.I.A. 1997)); *see also Micakovic v. Ashcroft*, 85 F. App'x 424, 426 (6th Cir. 2003) (upholding the IJ's denial of asylum on the basis that even though the applicant was credible, he could reasonably be expected to corroborate his claim of past persecution through objective evidence or outside testimony).

Sultana also has many cousins who live in Pakistan, and she did not provide any objective evidence that they would not provide her protection. Finally, Sultana has three children, including two sons, who currently live in Pakistan. Sultana claims that the IJ erred in suggesting that she inform her older son of her ex-husband's infidelity and ask the son to remain in Pakistan and give her protection. But given the fact that Sultana has the burden of establishing that she falls within the

-10-

claimed social group, the IJ reasonably questioned whether she had fully explored her options for having protection in Pakistan.

Because Sultana did not carry her burden of showing that she would be without male protection in Pakistan, we need not decide whether single women living there without a male protector is a cognizable social group for asylum purposes. The IJ, moreover, found that even if Sultana was a member of this group and the group was cognizable, the primary source of harm to these women is their own families seeking revenge, and that Sultana has shown no evidence that anyone in her own family seeks to harm her. Sultana has therefore not established (1) past persecution or a well-founded fear of future persecution as a result of her ex-husband's political activities, or (2) a well-founded fear of future persecution as a result of membership in the purported social group of single women living in Pakistan without a male protector.

**D.     Sultana's claim for withholding of removal and protection under the CAT**

Because Sultana's asylum claim fails, so too must her claim for withholding of removal. If an applicant has not established past persecution, a claim for withholding requires evidence that "it is more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal." 8 C.F.R. § 1208.16(b)(2). This "more likely than not" standard is a more demanding burden of proof than what is required to establish asylum. *Sarr v. Gonzales*, 485 F.3d 354, 361-62 (6th Cir. 2007). Sultana did not meet the burden of showing future persecution for asylum purposes and therefore

cannot meet the higher burden for withholding of removal. *See id.* (rejecting a claim for withholding of removal because the applicant did not meet the more lenient standard for asylum).

Similarly, because Sultana failed to demonstrate that she qualifies for asylum, her claim for protection under the CAT must also fail. In order to obtain protection under the CAT, Sultana must show that it is "more likely than not" that she would be tortured if she were removed to Pakistan. *See Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004) (quoting 8 C.F.R. § 208.16(c)(2)). Although a CAT claim does not require the applicant to establish membership in one of the five protected classes for asylum, torture "involves more severe treatment than persecution." *Bassam v. Holder*, No. 08-3924, 2009 WL 2170106, at *6 (6th Cir. July 21, 2009) (unpublished); *see also* 8 C.F.R. § 1208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of . . . punishment that do not amount to torture.").

As discussed above, Sultana did not meet her burden of establishing asylum. She therefore does not qualify for protection under the CAT. *See Bah v. Gonzales*, 462 F.3d 637, 643 (6th Cir. 2006) ("Because [the applicant] cannot show that she qualifies for asylum, she cannot meet the more stringent standards required to qualify for the protection[] . . . under CAT.").

**E.     Sultana's due process arguments**

**1.     *Humanitarian asylum***

In her appellate brief, Sultana argues that her due process rights were violated "when she was denied the opportunity to present evidence that she would be eligible for Humanitarian Asylum."

Sultana raised a similar argument in her brief before the BIA. Neither the IJ nor the BIA addressed the issue of humanitarian asylum.

As an initial matter, the record does not reflect that Sultana ever requested and was denied the opportunity to present such evidence. Humanitarian asylum was not brought up at Sultana's 2007 merits hearing, and Sultana's application fails to mention that basis for asylum. Moreover, Sultana's brief points to no evidence in the record denying such an opportunity. If she did not request the opportunity to present such evidence, then her due process rights could not have been violated by any alleged failure to permit her to do so. *See Gilaj v. Gonzales*, 408 F.3d 275, 290 (6th Cir. 2005) (rejecting the applicants' claim that the IJ violated their due process rights by denying them the opportunity to present a closing argument where the applicants never requested the opportunity to do so).

Sultana's belated claim of humanitarian asylum, furthermore, fails on the merits even if it was not procedurally waived. Establishing a claim of humanitarian asylum requires several steps. First, an asylum applicant must establish past persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.13(b). The government must next establish that the applicant's or home country's circumstances are such that the applicant no longer has a well-founded fear of future persecution, or that the applicant could avoid future persecution by relocating to another part of his or her home country. *Id.* Finally, the applicant must establish either "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution," or that there "is a reasonable possibility

that he or she may suffer *other* serious harm upon removal." *Id.* (emphasis added). "Other serious harm is 'harm that is not inflicted on account of race, religion, nationality, membership in a particular social group, or political opinion, but is so serious that it equals the severity of persecution.'" *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting *Krastev v. INS*, 292 F.3d 1268, 1271 (10th Cir. 2002)).

Sultana would therefore have needed to present evidence about past persecution and the various types of harm allegedly facing her, all of which she was permitted to present in her application for asylum and at her 2007 merits hearing. So even assuming that Sultana had requested the opportunity to present evidence for a humanitarian asylum claim, she was not denied that opportunity.

Where the BIA does not expressly address a claim (assuming that the claim was properly raised before it), this court ordinarily remands the case back to the BIA. *See Martini v. Mukasey,* 314 F. App'x 819, 826 (6th Cir. 2008). Remand is not necessary in this case, however, because based on the IJ's and the BIA's finding that Sultana did not suffer past persecution, her claim of humanitarian asylum cannot succeed. *See Ben Hamida v. Gonzales*, 478 F.3d 734, 741 (6th Cir. 2007) (holding that the applicants' humanitarian asylum claim "must fail" because they had not offered evidence of past persecution). Remand is therefore not necessary. *See Martini,* 314 F. App'x at 826 (holding that although the IJ and the BIA did not expressly rule on a humanitarian asylum claim, remand was not necessary because the applicants had not demonstrated past persecution).

> ### 2. *Alleged bias of the IJ*

Sultana's final argument on appeal is that the IJ violated her due process rights when he speculated about important facts and when he made improper inferences about the reliability of the purported letter from Sultana's brother. She also claims that the IJ showed bias against her when he suggested that she ask one of her sons to remain in Pakistan to care for her, and that "many instances of questioning and commentary by the IJ . . . suggest that [she] did not receive a fair hearing."

We have previously addressed Sultana's claims with regard to the letter and the IJ's suggestion that Sultana ask one of her sons to remain in Pakistan. As for the argument that the IJ speculated about important facts or denied Sultana a fair hearing, the record shows these claims to be without merit. The record as a whole establishes that the IJ carefully considered the relevant facts and issues, made well-reasoned conclusions, and provided Sultana with a fair opportunity to present her case.

## III. CONCLUSION

For all of the reasons set forth above, we **DENY** Sultana's petition for review.