NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0496n.06

No. 10-3344

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jul 18, 2011*

LEONARD GREEN, Clerk

HUSSEIN ISMAIL,

    *Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney General,

    *Respondent*.

ON PETITION FOR REVIEW OF
AN ORDER OF THE BOARD
OF IMMIGRATION APPEALS

**OPINION**

———————————————————————/

**Before:**      **KENNEDY, SILER, and McKEAGUE, Circuit Judges.**

     **CORNELIA G. KENNEDY, Circuit Judge.** Petitioner Hussein Ismail seeks this Court's review of a final order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ's") decision to deny his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and Article III of the United Nations Convention Against Torture ("CAT"). Because we lack jurisdiction to review the BIA's conclusion that Ismail's asylum application was untimely, and because substantial evidence supports the BIA's decision to deny withholding of removal, we **DENY** the petition for review.

## FACTUAL AND PROCEDURAL BACKGROUND

     Ismail was born in 1954 in the village of Lebayya, Lebanon, where he resided until 1984. At that time, he left Lebanon and eventually settled in the United Arab Emirates ("UAE"). In 1998, Ismail moved again, this time to the United States; he legally entered the country as a nonimmigrant

business visitor, and he had authorization to remain until January 8, 2001. On November 8, 2006, the Department of Homeland Security issued him a Notice to Appear on charges of removal. At a hearing before the IJ on July 11, 2007, Ismail conceded removability, and on October 7, 2007, he filed for asylum, withholding of removal under the INA, and CAT protection.

The IJ held a merits hearing on June 9, 2008, during which Ismail testified that he was afraid of returning to Lebanon due to his past involvement with the Southern Lebanese Army ("SLA"). According to Ismail, the SLA was a pro-Israel group that opposed the Syrian presence in Lebanon, and its former members are therefore targets of various political organizations, including Hezbollah. Ismail testified that, in 1984, his brother Youssef, who was also a member of the SLA, was found dead of a bullet wound outside of Lebayya, with a note on his body saying "this is how your destiny will be if you keep cooperating with Israel, and we going [sic] to kill you one at a time." Ismail concluded that Hezbollah was responsible for Youssef's death, a conviction that was strengthened, he maintained, by the fact that several individuals wearing Hezbollah uniforms attended Youssef's burial and threatened him and other family members. Ismail also asserted that, a few days later, shots were fired at him as he walked home around midnight; additionally, he claimed that someone left a note at the Lebayya mayor's office stating that he would meet the same fate as his brother. Again, Ismail believed that Hezbollah or its allies was behind these acts. It was at this point, Ismail testified, that he left Lebanon for the UAE. Early in 1998, Ismail claimed that he received two letters, forwarded to his home in the UAE by the mayor of Lebayya and again alleged to have been sent from Hezbollah, threatening "we going [sic] to keep chasing you until we kill you." Ismail stated that these letters prompted his move to the United States approximately six months later, in

October of 1998. Ismail further reported that, in August of 2002, he heard news that his second brother had been killed by Hezbollah for cooperating with Israel. Ismail confirmed that he has not returned to Lebanon since he left in 1984, noting that civil unrest in the country has increased throughout the 1980s and 1990s and that Hezbollah now controls the region in which Lebayya is located. However, Ismail admits that his parents, one brother, five sisters, and one son currently live in Lebanon free from harassment by Hezbollah.

After hearing Ismail's testimony—as well as that of his cousin, Ismail Sharif Ismail, confirming Ismail's assessment that conditions in Lebanon had deteriorated due to civil unrest—the IJ denied Ismail's applications for relief and ordered removal. The IJ first noted that he did not find Ismail's testimony credible, citing Ismail's demeanor, numerous inconsistent statements, and several important assertions made in court but left out of Ismail's asylum application. The IJ then denied Ismail's application for asylum as untimely. The IJ also concluded that, even if the application was timely, it would fail on its merits because Ismail had not proven that he was a victim of past persecution, or that he had a well-founded fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. Consequently, the IJ found that Ismail did not meet the higher burden for withholding of removal under the INA, as he had failed to demonstrate that it is more likely than not his life or freedom would be threatened on account of one of the protected grounds. Finally, the IJ determined that Ismail had presented no evidence suggesting he would be subject to torture by, or with the acquiescence of, the Lebanese government, so he did not warrant withholding of removal under the CAT.

On March 26, 2010, the Board of Immigration Appeals ("BIA") affirmed the IJ's ruling. The BIA agreed that Ismail was ineligible for asylum due to the untimely filing of his application. Though the BIA declined to review the IJ's adverse credibility finding, it upheld the IJ's denial of withholding of removal because, even if Ismail's testimony was considered credible, he had not established a well-founded fear of future persecution, a threat to his life or freedom, or a likelihood that he would be subject to torture in Lebanon. Ismail filed a timely petition for review in this Court.

## ANALYSIS

On appeal, Ismail challenges the denial of asylum as well as withholding of removal under both the INA and the CAT. Because the BIA issued a separate opinion, rather than summarily affirming the IJ, we review that decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). However, we also review the IJ's decision, to the extent that the BIA adopted the IJ's reasoning. *Id.*

## I.     Asylum

We lack jurisdiction to review the denial of Ismail's asylum application. Both the IJ and the BIA found that Ismail is ineligible for asylum because he filed his application outside the statutory deadline of one year after his arrival in the United States, *see* 8 U.S.C. § 1158(a)(2)(B), and he did not qualify for an exception to this requirement, which may be granted due to "the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application," *id.* § 1158(a)(2)(D). The INA bars judicial review of asylum applications denied for untimeliness, *id.* § 1158(a)(3), unless the petition for review raises "constitutional claims or questions of law," *id.* § 1252(a)(2)(D). That is, "we have

jurisdiction to review asylum applications denied for untimeliness only when the appeal seeks review of constitutional claims or matters of statutory construction, not when the question is discretionary or factual." *Khozhaynova v. Holder*, 641 F.3d 187, 191 (6th Cir. 2011) (internal quotation marks omitted). Here, Ismail appeals the IJ's and the BIA's decision that no changed circumstances existed in Lebanon to warrant an exception to the filing deadline, which finding is "a predominantly factual determination." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006) (internal quotation marks omitted). Therefore, we dismiss Ismail's petition to review the BIA's denial of asylum for lack of jurisdiction.

## II.    Withholding of Removal

As for the denial of withholding of removal under the INA and CAT, we must uphold the BIA's determination if it is supported by substantial evidence. *Dugboe v. Holder*, --- F.3d ----, 2011 WL 2621903, at *9 (6th Cir. July 6, 2011). Reversal is appropriate only  when the BIA's decision is "'manifestly contrary to law,'" *Almuhtaseb*, 453 F.3d at 749 (quoting 8 U.S.C. § 1252(b)(4)(C)), that is, only when "the evidence not only supports a contrary conclusion, but indeed compels it," *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 501-02 (6th Cir. 2007) (internal quotation marks omitted). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ." 8 U.S.C. § 1252(b)(4)(B); *accord Castellano-Chacon v. INS*, 341 F.3d 533, 545, 552 (6th Cir. 2003).

As a threshold matter, Ismail challenges the IJ's adverse credibility finding, arguing that his testimony was corroborated by documents he had proffered during the proceedings before the IJ but that the IJ had erroneously refused to admit into evidence. However, the BIA declined to rule on the

issue of Ismail's credibility; instead, it determined that, even if Ismail's testimony were true, he had not met his burden for withholding of removal under either the INA or the CAT. When faced with such a decision, this Court has previously adopted the following procedure:

> [W]hen an IJ or the BIA expresses suspicion about an applicant's lack of credibility but the BIA fails to make an explicit adverse determination and instead denies relief on some other basis, we will assume that the applicant was credible in order to review the actual grounds for the ruling. . . . If we conclude that the stated basis for denying relief was supported by substantial evidence, further review is foreclosed. If the evidence compels the opposite result, however, we will remand for a credibility determination.

*Haider v. Holder*, 595 F.3d 276, 282 (6th Cir. 2010). Accordingly, we will consider only whether the evidence presented to the IJ alleges conditions that merit withholding of removal.

### A.      The Immigration and Nationality Act

Withholding of removal under the INA is required if an alien can demonstrate that "his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b). "In order to qualify for withholding of removal, [Ismail] must establish that there is a clear probability that [he] will be subject to persecution if forced to return to [Lebanon]." *Liti v. Gonzales*, 411 F.3d 631, 640-41 (6th Cir. 2005) (internal quotation marks omitted). "To establish a clear probability, the applicant must demonstrate that 'it is more likely than not' that he or she will be persecuted upon return." *Id.* at 641 (quoting 8 C.F.R. § 1208.16(b)(2)); *see also Kouljinski v. Keisler*, 505 F.3d 534, 544 (6th Cir. 2007) ("This showing of 'clear probability' requires more than that needed to demonstrate refugee status, which requires only a 'well-founded fear of [future] persecution.'" (quoting 8 C.F.R. § 208.13(b))). If Ismail can establish past persecution based on one

of the five protected grounds, he is entitled to a rebuttable presumption that his life or freedom would be threatened upon return to Lebanon. *See* 8 C.F .R. § 1208.16(b)(1).

The BIA's finding that Ismail "failed to meet his burden to establish a well-founded fear or a clear probability of persecution upon his return to Lebanon" is supported by substantial evidence. The threats Ismail reports he received via letters and at his brother's funeral—even if Hezbollah operatives were behind them, as Ismail claims—do not amount to past persecution. *See Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998) ("'[P]ersecution' within the meaning of [the INA] requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty."); *see also Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010) (noting that "[o]nly threats of a most immediate and menacing nature can possibly qualify as past persecution" (internal quotation marks omitted)). As for Ismail's claim that he was shot at while walking home one night, he offers no evidence of the identity of the shooter or the motive behind the attack, other than his bare assertion that Hezbollah was responsible. This evidence does not compel the conclusion that Ismail suffered from past persecution, and that he therefore faced a clear probability of future persecution. *See Abdallah v. Gonzales*, 193 F. App'x 408, 409 (6th Cir. 2006) (affirming the BIA's decision that applicant had not met his burden for withholding of removal to Lebanon when applicant testified, without corroborating evidence, that he received threatening letters and phone calls from Hezbollah and that he was shot at by, "he speculate[d] without evidence[,] . . . one of his many political enemies").

Neither does this evidence, even when coupled with Ismail's allegations that his two brothers were killed by Hezbollah due to their affiliation with SLA and support of Israel, compel a determination that Ismail faces a clear probability of persecution upon his return to Lebanon. As the BIA noted, more than twenty-five years had passed since Ismail's alleged involvement with the SLA, as well as almost twenty years since he purportedly received a threat from Hezbollah and more than five years since the death of his second brother. Furthermore, since that time, Ismail's parents, sisters, brother and son have lived in Lebanon free from persecution, even though Ismail avers that his pro-SLA activities included entertaining SLA members and Israeli soldiers at the family farm where his parents still reside. *See Shvedko v. Holder*, 411 F. App'x 817, 821 (6th Cir. 2011) (stating that married couple's claim for withholding of removal to Estonia, based on fear of persecution due to husband's past affiliation with the KGB and the Estonian secret police, was undercut by fact that their "children have continued to reside in the family apartment without being harmed since their parents came to the United States"). Additionally, the State Department's 2007 Country Report for Lebanon—which was part of the record in the agency proceedings—acknowledges that Hezbollah "retained significant influence over [only] parts of the country." Ismail himself even testified at one point that there were parts of Lebanon where Hezbollah did not pose a significant danger. Ismail offered no reason why he could not return to these areas of the country. *See* 8 C.F.R. § 1208.16(b)(2) ("[A]n applicant cannot demonstrate that his or her life or freedom would be threatened if the asylum officer or immigration judge finds that the applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so."). Given these facts, the

BIA's conclusion that Ismail did not meet his burden for withholding of removal under the INA is not manifestly contrary to law, and his petition for review of this decision is denied.

### B. The Convention Against Torture

To qualify for protection under the CAT, Ismail bears the burden of proving that it is more likely than not that he would be tortured if removed to Lebanon. *Id.* § 1208.16(c)(2).

> [Torture] is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted" to extract information, punish, intimidate, coerce, or otherwise discriminate, "when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."

*Haider*, 595 F.3d at 289 (quoting 8 C.F.R. § 1208.18(a)(1)). "The term 'torture' only describes 'an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture.'" *Almuhtaseb*, 453 F.3d at 751 (quoting 8 C.F.R. § 1208.18(a)(2)).

The BIA found that Ismail "has not established that it is more likely than not that he would be tortured by, or with the acquiescence of, the Lebanese government." For the same reasons that Ismail has not established that he will more likely than not face persecution should he return to Lebanon, he has also failed to demonstrate that he will more likely than not be tortured upon removal. *See Bassam v. Holder*, 338 F. App'x 507, 513 (6th Cir. 2009) ("[T]he concept of torture involves more severe treatment than persecution."). In particular, the facts that Ismail's family has remained in Lebanon unharmed and, by his own testimony, there are parts of Lebanon in which he can avoid potential harm from Hezbollah defeat his CAT claim. *See Shvedko*, 411 F. App'x at 822; *Korley v. Holder*, No. 09-3972, 2011 WL 2184340, at *3 (6th Cir. June 7, 2011). The evidence does

not compel the conclusion that Ismail is entitled to withholding of removal under the CAT, so we

deny this portion of Ismail's petition for review.

**CONCLUSION**

For the foregoing reasons, we **DENY** Ismail's petition for review from the BIA's decision

denying him asylum and withholding of removal under the INA or the CAT.