Maria G. RAMOS; Jessica
Ramos, Petitioners,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Nos. 99–70343, 99–71606.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted December
28, 2000

Filed April 20, 2001

Maria G. Ramos and Jessica Ramos, Pacoima, California, for the petitioners.

Cindy S. Ferrier, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

Before: CHOY, WALLACE and SKOPIL, Circuit Judges.

CHOY, Circuit Judge:

Maria Ramos ("Ms.Ramos") and Jessica Ramos ("Miss Ramos"), mother and daughter citizens of Mexico, petition for review of the decision of the Board of Immigration Appeals ("BIA"), reversing the Immigration Judge's ("IJ") order and denying their application for suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1). The Ramoses contend that Ms. Ramos's false statements to an asylum officer do not preclude a finding of good moral character, that any false testimony should be considered in light of her subsequent honesty, that the Ramoses received ineffective assistance of counsel, and that Miss Ramos and her father would experience extreme hardship if she returned to Mexico. We dismiss the petition for review of the BIA's denial of suspension of deportation.

I. Lack of Good Moral Character

To qualify for suspension of deportation, the Ramoses must prove that dur-

ing the seven years prior to the application, they were, and continue to be, "of good moral character." 8 U.S.C. § 1254(a)(1). An applicant cannot qualify as a person of good moral character if, "during the period for which good moral character is required to be established," the applicant gave "false testimony for the purpose of obtaining benefits under this chapter." 8 U.S.C. § 1101(f)(6). For a witness's false testimony to preclude a finding of good moral character, the testimony must have been made orally and under oath, and the witness must have had a subjective intent to deceive for the purpose of obtaining immigration benefits. *See Kungys v. United States*, 485 U.S. 759, 780, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988).

 We review for substantial evidence a finding of statutory ineligibility for suspension of deportation based on a lack of good moral character. *See Bernal v. INS*, 154 F.3d 1020, 1022 (9th Cir.1998). Because the BIA reviewed the IJ's decision de novo, we review only the BIA's decision. *See Cordon–Garcia v. INS*, 204 F.3d 985, 990 (9th Cir.2000).

 Ms. Ramos argues that she did not give false testimony because the asylum officer to whom she gave her statement was not a court or tribunal. We have held that statements made to an INS officer in a naturalization examination constitute testimony. *See Bernal*, 154 F.3d at 1023. In affirming a finding of lack of good moral character based on false testimony in a naturalization interview, we looked to the fact that an INS officer is authorized "to take testimony," and that the statements were made "under oath in a question-and-answer statement before an INS officer. . . ." *Bernal*, 154 F.3d at 1023 (citing 8 U.S.C. § 1446(b)). The same can be said of the facts in the present case. Statements made to asylum officers are similarly referred to as testimony in the relevant regulation. *See* 8 C.F.R. § 208.13(a) ("The

testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."). Moreover, witnesses' statements in an asylum interview are under oath and are presented in a question-and-answer format. *See* 8 C.F.R. § 208.9(c) (giving asylum officers the authority to "administer oaths . . . present and receive evidence, and question the applicant and any witnesses").

Because an asylum examination possesses the same relevant qualities as a naturalization examination, we consider Ms. Ramos's statements to be testimony for purposes of 8 U.S.C. § 1101(f)(6). *See In re R–S–J–*, Interim Decision 3401, 1999 WL 374555 (BIA 1999); *Matter of Ngan*, 10 I & N Dec. 725, 729, 1964 WL 12125 (BIA 1964).

 Ms. Ramos further argues that her false testimony does not establish a lack of good moral character because she withdrew her application and she admitted to the IJ that she had been lying. Although her later honesty may speak of her good character otherwise, it does not remove her from the ambit of the statute. Whether she eventually received benefits because of the false testimony is irrelevant; the statute only refers to statements made "for the purpose of obtaining" any immigration benefits, not that resulted in such benefits. 8 U.S.C. § 1101(f)(6). Also, the Supreme Court has been reluctant to infer mitigating requirements for the false testimony exception to good moral character. *See Kungys*, 485 U.S. at 781, 108 S.Ct. 1537. Given the fact that Ms. Ramos's actions fall within the letter of the false testimony exception, substantial evidence supports the BIA's holding. *See In re R–S–J–*, Interim Decision 3401, 1999 WL 374555 (BIA 1999).

 The Ramoses present two related arguments for the first time in this petition: (1) that there was no evidence

that the petitioner was under oath during the asylum interview, and (2) that they received ineffective assistance of counsel. Neither issue was presented to the BIA. Failure to raise an argument before the BIA deprives this court of jurisdiction. *See Cortez–Acosta v. INS*, 234 F.3d 476, 480 (9th Cir.2000); *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir.1994). Thus, we lack jurisdiction to review these arguments.

II. Extreme Hardship Requirement

 Finally, the Ramoses challenge the BIA's determination that neither Miss Ramos nor her father would suffer extreme hardship. To qualify for suspension of deportation, an applicant must prove that her "deportation would ... result in extreme hardship...." 8 U.S.C. § 1254(a)(1). Petitioners claim that the BIA failed to consider numerous factors that support their contention that Miss Ramos and her father would suffer extreme hardship.

We lack jurisdiction to review the BIA's conclusion on this issue. This case is subject to the transitional changes in judicial review of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") because the deportation proceedings were pending before the April 1, 1997, effective date of the IIRIRA and the BIA's deportation order was entered after October 30, 1996. *See* IIRIRA § 309, Pub.L. No. 104–208, 11 Stat. 3009 (1996); *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997). Under the transitional rules, we lack jurisdiction to review the BIA's decision regarding extreme hardship. *See Kalaw*, 133 F.3d at 1152.

*Conclusion*

Substantial evidence supports the BIA's determination that Ms. Ramos lacked good moral character. We lack jurisdiction to review the BIA's determination regarding extreme hardship.

PETITION FOR REVIEW DENIED IN PART AND DISMISSED IN PART.