MEMORANDUM **
Edward Karanja, a national and citizen of Kenya, and his wife, Winnie Hiuhu, petition for review of a final order of the Board of Immigration Appeals (BIA) adopting the immigration judge’s (IJ) decision denying their application for asylum and withholding of removal under both the Immigration and Nationality Act (INA) and the United Nations Convention *209 Against Torture (CAT). We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1) and deny the petition for review.
I
The IJ’s adverse credibility determination is supported by specific, cogent reasons, see Gui v. INS, 280 F.3d 1217, 1225 (9th Cir.2002), and substantial evidence. Naranja testified that the editor of the magazine for which he worked, and with whom he was ai*rested, was convicted of treason and served three years; however, this was contradicted by other evidence that the editor was jailed for failing to file financial reports and, more importantly, was sentenced to nine months but served less than a month. Further, Naranja testified that his fingernails were plucked out, whereas his declaration said toenails. Finally, Naranja admitted to submitting a manufactured and fraudulent Democratic Party membership card. He was given an opportunity to explain each inconsistency, but the IJ found he did not do so plausibly. We cannot say the IJ was compelled to find otherwise. Naranja unambiguously referred to the editor’s sentence alone— not, as he tried to explain, to a range of sentences that the editor and others received. Regardless of the implement used, and the IJ’s interjecting for the record “[sjhowing the fingernails,” Naranja conceded there was a discrepancy, reiterated that the harm was to his fingernails, and offered only a vague explanation for testifying contrary to his declaration. And there is no question he offered a fraudulent document in support of his claim of political persecution. To his credit, Naranja acknowledged this was a mistake, but that does not undermine the IJ’s finding. As these unexplained inconsistencies go to the heart of Naranja’s claim, the IJ could determine that his testimony was not credible and thus, he is not eligible for asylum. See de Leon-Barrios v. INS, 116 F.3d 391, 393 (9th Cir.1997);[1] Ceballos-Castillo v. INS, 904 F.2d 519, 520 (9th Cir.1990).
Given this determination, Naranja is not entitled to a presumption of future persecution. The record does not compel a finding of well-founded fear of future persecution, or torture for purposes of CAT relief, as both are based on the same testimony found incredible. See Farah v. Ashcroft, 348 F.3d 1153, 1157 (9th Cir.2003). In addition, the IJ found that country conditions have changed, a finding to which no objection is preserved.
II
The IJ’s treatment of a letter and “reissued” membership card purportedly sent by the Democratic Party of Nenya did not deny Naranja due process or a fair hearing. The IJ gave specific, cogent reasons for evaluating the credibility of these documents. Naranja points to no authority requiring the IJ to subject the “reissued” card to the same forensic examination as his original, fraudulently-manufactured submission.
III
We lack jurisdiction to consider whether the IJ erred by taking administrative notice of Nenya’s regime change because Naranja failed to raise it before the BIA. Ramos v. INS, 246 F.3d 1264, 1267 (9th Cir.2001).
PETITION DENIED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9 th Cir. R. 36-3.

. Because Karanja's asylum application was filed prior to May 11, 2005, the REAL ID Act, whicli did away with this circuit's “heart of the claim” rule, see 8 U.S.C. § 1158(b)(l)(B)(iii), does not apply. See Kaur v. Gonzales, 418 F.3d 1061, 1064 n. 1 (9th Cir.2005).