# Matter of Antonio GOMEZ-BELTRAN, Respondent

*Decided June 27, 2016*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien cannot establish good moral character under section 101(f)(6) of the Immigration and Nationality Act, 8 U.S.C. § 1101(f)(6) (2012), if, during the period for which it is required, he or she gives false testimony under oath in proceedings before an Immigration Judge with the subjective intent of obtaining immigration benefits.

FOR RESPONDENT: Marina N. Alexandrovich, Esquire, Tempe, Arizona

FOR THE DEPARTMENT OF HOMELAND SECURITY: Brent Landis, Senior Attorney

BEFORE: Board Panel: MALPHRUS and CREPPY, Board Members; GELLER, Temporary Board Member.

MALPHRUS, Board Member:

In a decision dated October 3, 2012, an Immigration Judge found the respondent removable on his own admissions under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2012), as an alien who is present in the United States without being admitted or paroled, and denied his applications for cancellation of removal under section 240A(b)(1) of the Act, 8 U.S.C. § 1229b(b)(1) (2012), and voluntary departure. The respondent has appealed from that decision and has filed a motion to reopen and remand. The Department of Homeland Security ("DHS") opposes both the respondent's appeal and his motion. The appeal will be dismissed, and the motion will be denied.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who last entered the United States on January 1, 2007. On his application for cancellation of removal, the respondent claimed that he had only one conviction, which

---

[1] Subsequent to filing a brief on appeal, the respondent's attorney moved to withdraw as counsel of record. Because no adequate basis has been shown to permit withdrawal of counsel at this late stage of the appeal, the motion is denied.

was on January 9, 2009, for driving under the influence.  However, when he testified before the Immigration Judge, the respondent at first stated that he had never been convicted of any criminal offense.  He only acknowledged the conviction after being reminded by counsel that it was listed on his application.  The respondent's attorney then asked if he had "any other arrests or convictions anywhere in the world," to which the respondent clearly answered, "No, sir."

On cross-examination, the respondent initially reaffirmed his claim that he had no other arrests or convictions.  After he repeatedly denied any further criminal activity, the DHS confronted him with a series of specific dates and offenses that the respondent had not disclosed on his application.[2] Even after the DHS questioned the respondent about the first of these offenses, he did not correct his prior misrepresentation or voluntarily reveal the extent of his criminal history, waiting instead until the DHS asked him about each incident.  The respondent eventually admitted five additional arrests or convictions that were not included in his application and were not disclosed during the hearing until the DHS confronted him with each one.

The Immigration Judge found that the respondent gave false testimony regarding his criminal history at the hearing and determined that he was not credible.  Based on the respondent's false testimony, the Immigration Judge concluded that he lacked good moral character under section 101(f)(6) of the Act, 8 U.S.C. § 1101(f)(6) (2012), and was statutorily ineligible for cancellation of removal and voluntary departure.  The Immigration Judge also denied his applications for relief in the exercise of discretion.[3]

## II.  ANALYSIS

### A.  Good Moral Character

The respondent has the burden of establishing that he meets all applicable eligibility requirements for cancellation of removal and that he merits a grant of relief in the exercise of discretion.  *See* section 240(c)(4) of the Act, 8 U.S.C. § 1229a(c)(4) (2012); 8 C.F.R. § 1240.8(d) (2016).  To qualify for cancellation of removal under section 240A(b)(1) of the Act, the respondent must establish, among other things, that he has been a person of

---

[2]  We note that the question on the cancellation application regarding the applicant's criminal history is broadly worded to require full disclosure of all arrests and convictions.
[3]  We review the Immigration Judge's findings of fact, including those relating to credibility, to determine if they are clearly erroneous.  8 C.F.R. § 1003.1(d)(3)(i) (2016). We review de novo all questions of law, discretion, and judgment.   8 C.F.R. § 1003.1(d)(3)(ii).

good moral character for at least 10 years immediately preceding the date of his application.[4]  Section 240A(b)(1)(B) of the Act.

Section 101(f)(6) of the Act provides that no person can establish good moral character if, during the period for which it is required, he or she "has given false testimony for the purpose of obtaining any benefits" under the Act.  The term "testimony" in section 101(f)(6) is limited to oral statements made under oath.  *Matter of L-D-E-*, 8 I&N Dec. 399, 402 (BIA 1959) (holding that false statements in an application do not constitute testimony).  The Supreme Court has determined that the statutory bar applies to any oral statements made under oath by a person who has a subjective intent to obtain immigration benefits, regardless of whether the misrepresentation is material.  *Kungys v. United States*, 485 U.S. 759, 780 (1988) (stating that section 101(f)(6) "denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits").

Immigration court proceedings are adversarial in nature and are governed by formal rules of procedure, which include requiring the Immigration Judge to take witness testimony under oath at transcribed

---

[4]  The respondent's false testimony occurred during the period in which he was required to establish good moral character.  In *Matter of Ortega-Cabrera*, 23 I&N Dec. 793 (BIA 2005), we held that an application for cancellation of removal under section 240A(b)(1) of the Act is a continuing application for purposes of evaluating whether an applicant has established the required 10-year period of good moral character.  In this case, the respondent provided false testimony before the Immigration Judge in June 2012, 2 years after his application was filed in May 2010, and 4 years prior to our current resolution of the matter.

In *Castillo-Cruz v. Holder*, 581 F.3d 1154, 1162 (9th Cir. 2009), the United States Court of Appeals for the Ninth Circuit, the jurisdiction in which this case arises, cited *Matter of Ortega-Cabrera* and applied our approach to determining the period of good moral character for section 240A(b)(1) cancellation of removal.  Moreover, other circuit courts have expressly deferred to our interpretation under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  *Rodriguez-Avalos v. Holder*, 788 F.3d 444, 452−55 (5th Cir. 2015); *Duron-Ortiz v. Holder*, 698 F.3d 523, 526−28 (7th Cir. 2012).

In *Aragon-Salazar v. Holder*, 769 F.3d 699, 706 n.4 (9th Cir. 2014), the Ninth Circuit held that an application for special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105–100, 111 Stat. 2160, 2193 (1997), is not a continuing one for purposes of evaluating good moral character and that the required period of good moral character refers only to the 7 years immediately preceding the filing of the application.  The court declined to follow *Castillo-Cruz*, finding that it arose "in a different context."  *Id.*  We conclude that *Castillo-Cruz* continues to be controlling in the context of applications for cancellation of removal under section 240A(b)(1) of the Act.

hearings. Section 240(b)(1) of the Act; *Jacinto v. INS*, 208 F.3d 725, 732−33 (9th Cir. 2000); 8 C.F.R. §§ 1240.7(b), 1240.9 (2016). False statements made under oath during proceedings before an Immigration Judge may constitute false testimony within the meaning of section 101(f)(6) of the Act. *See Phinpathya v. INS*, 673 F.2d 1013, 1018−19 (9th Cir. 1981) ("Testimony means a statement made by a witness under oath for the purpose of establishing proof of a fact to a court or tribunal."), *rev'd on other grounds*, 464 U.S. 183 (1984); *Matter of Barcenas*, 19 I&N Dec. 609, 612 (BIA 1988) (finding that an alien's false statements at a deportation hearing rendered him ineligible for voluntary departure); *cf. Ramos v. INS*, 246 F.3d 1264, 1266 (9th Cir. 2001) (holding that false statements made in an asylum examination are "false testimony"); *Bernal v. INS*, 154 F.3d 1020, 1023 (9th Cir. 1998) (holding that false statements made under oath in a naturalization interview are "false testimony").

Truthful testimony and disclosures are critical to the effective operation of the immigration court system. In the asylum context, courts have noted that the process depends on the alien's fundamental obligation to tell the truth. *Martinez v. Holder*, 557 F.3d 1059, 1065 (9th Cir. 2009) (stating that the "asylum process is ultimately an honor system" and that the major check on the system is not the "[Immigration Judge's] scrutiny or the government's fact checkers," but is, instead, "the asylum seeker's belief that he or she will be held to that oath"); *Diallo v. Gonzales*, 447 F.3d 1274, 1280 (10th Cir. 2006) ("Asylum seekers must be held accountable for the veracity of statements that they swear to under oath."). The same principle applies to applications for cancellation of removal.

In this case, the respondent testified that he had only been convicted of a single offense in 2009, denied any further incidents, and then admitted five additional arrests or convictions when confronted with each one by the DHS during cross-examination. He claims that his testimony was not untruthful because he honestly answered questions regarding specific offenses and dates and that it only appeared inconsistent when he was asked "vague, open-ended questions." [5]

We do not agree. The questions regarding criminal history on the cancellation of removal application and at the hearing were not vague; they were simple and direct. The respondent was asked about his criminal history several times during the hearing and was given ample opportunity to disclose all his arrests and convictions before he was confronted by the

---

[5] The respondent may have been confused by the use of the term "departure" during a line of questioning concerning his entries and departures. However, in finding that the respondent gave false testimony, the Immigration Judge did not appear to rely on this possible inconsistency, and we have not considered it in reviewing his decision.

DHS. There is no indication that he did not understand the questions.[6] *Cf. United States v. Hovsepian*, 422 F.3d 883, 887–88 (9th Cir. 2005) (en banc) (finding no subjective intent to deceive under section 101(f)(6) of the Act where inaccuracies resulted from poor memory, mistake, or vague questioning).

Nor was the interpretation of the proceedings in any way faulty. The respondent made no objection regarding the interpreter at the hearing, and he has made no showing on appeal that the interpreter did not perform competently. *See Matter of D-R-*, 25 I&N Dec. 445, 461−62 (BIA 2011); *Matter of Exilus*, 18 I&N Dec. 276, 280−81 (BIA 1982). The respondent claims that the interpreter mistakenly interpreted his date of birth as May 5, instead of May 14, but there is no indication that this discrepancy had any impact on his case. Furthermore, we find no merit to the respondent's suggestion that the DHS may have questioned him about another person's criminal record as a result of the incorrect birth date, because the respondent admitted each arrest or conviction referred to by the DHS. The remaining interpretation errors the respondent has identified were minor and unrelated to his false testimony. *See Matter of D-R-*, 25 I&N Dec. at 461−62.

Although the respondent eventually answered questions truthfully when confronted with his criminal records, this does not undermine the fact that he made false statements when initially asked about his arrests and convictions. He did not fully and voluntarily disclose his criminal history and only admitted each arrest or conviction when specifically confronted with it by the DHS. *See Ramos*, 246 F.3d at 1266 (stating that the petitioner's admission to lying did not preclude a finding that she lacked good moral character because "her later honesty . . . does not remove her from the ambit of the statute"). Therefore, the respondent did not voluntarily make a timely recantation of his false testimony. *Valadez-Munoz v. Holder*, 623 F.3d 1304, 1310 (9th Cir. 2010) (stating that "when a person supposedly recants only when confronted with evidence of his prevarication, the amelioration [for recantation] is not available"); *Matter of Namio*, 14 I&N Dec. 412, 414 (BIA 1973).

When asked why he did not fully disclose his criminal activities, the respondent stated only that he "did not know." The Immigration Judge did not err in rejecting this response as unpersuasive. The respondent's

---

[6] The respondent was represented by counsel throughout the proceedings, and there were no indicia of incompetency. *See Matter of M-A-M-*, 25 I&N Dec. 474, 477 (BIA 2011) (stating that "an alien is presumed to be competent" and that "absent indicia of mental incompetency, an Immigration Judge is under no obligation to analyze an alien's competency").

explanation raises a strong inference that he made false statements with the subjective intent to prevent the Immigration Judge from considering his criminal record in determining whether he is statutorily eligible for cancellation of removal and warrants such relief as a matter of discretion. *See Akwasi Agyei v. Holder*, 729 F.3d 6, 16 (1st Cir. 2013) (holding that the petitioner's false testimony about his sham marriage warranted a finding that he lacked good moral character because his unexplained "fear" of telling the truth raised the "strong inference" that he was "afraid" he would be denied adjustment of status, which "is indistinguishable from a subjective intent to obtain immigration benefits via fraud").

In determining whether the evidence is sufficient to establish that an applicant gave false testimony within the meaning of section 101(f)(6) of the Act, the trier of fact must conduct a case-by-case assessment. *See Hovsepian*, 422 F.3d at 887 ("Whether a person has the subjective intent to deceive in order to obtain immigration benefits is a question of fact."); *see also Siewe v. Gonzales*, 480 F.3d 160, 167 (2d Cir. 2007) ("Drawing inferences from direct and circumstantial evidence is a routine and necessary task of any factfinder. . . . In the immigration context, the [Immigration Judge] is the factfinder to whom this indispensable work is delegated."); *accord Matter of D-R-*, 25 I&N Dec. at 454. While not every misrepresentation or omission will be sufficient to constitute false testimony under section 101(f)(6) of the Act, this is not a close case. *See generally Kungys*, 485 U.S. at 781 (stating that the good moral character bar does not apply to mere "concealments").

We agree with the Immigration Judge that the respondent actively sought to mislead the court regarding the extent of his criminal history when he only admitted his 2009 conviction and denied any others in responding to clear questions that called for full disclosure. Consequently, the Immigration Judge did not clearly err in finding that the respondent made false statements under oath with a "subjective intent to deceive" for the purpose of influencing the Immigration Judge's decision regarding his applications for relief from removal. *Id.* at 780−81. We therefore conclude that the Immigration Judge properly held that the respondent is precluded from establishing good moral character under section 101(f)(6) of the Act and that he is statutorily ineligible for cancellation of removal under section 240A(b)(1)(B) of the Act and for voluntary departure.[7]

---

[7] Since the respondent has not established good moral character, we need not address the Immigration Judge's determination that he did not meet his burden to prove the requisite hardship under section 240A(b)(1)(D) of the Act. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (stating that "courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach").

Moreover, we agree with the Immigration Judge that the respondent does not merit a favorable exercise of discretion on his applications for relief from removal. *See* section 240(c)(4)(A)(ii) of the Act. Based on our de novo review of the record, we conclude that the respondent's equities, which include his long residence and family ties in the United States, are outweighed by his significant criminal history and his untruthfulness during the hearing. *See Aragon-Salazar v. Holder*, 769 F.3d 699, 706−07 (9th Cir. 2014) (stating that the Immigration Judge can consider an applicant's lack of truthfulness during the hearing as part of the discretionary determination on an application for relief). Accordingly, we conclude that the Immigration Judge properly denied the respondent's applications for cancellation of removal and voluntary departure, and we will dismiss his appeal.

## B.  Motion To Remand

The respondent's motion was filed during the pendency of his appeal, so it is considered to be a motion to remand. 8 C.F.R. § 1003.2(c)(4) (2016); *see also Matter of L-V-K-*, 22 I&N Dec. 976, 978−80 (BIA 1999) (discussing differences between a motion to reopen and a motion to remand in the context of an appeal). We conclude that the respondent has not demonstrated that a remand is warranted based on his newly submitted evidence and allegations of ineffective assistance of counsel. *See Matter of Coelho*, 20 I&N Dec. 464 (BIA 1992); *see also Matter of Rajah*, 25 I&N Dec. 127, 138 (BIA 2009) (stating that the requirements for a motion to remand are essentially the same as those for a motion to reopen).

First, the respondent has not substantially complied with the procedural requirements of *Matter of Lozada*, 19 I&N Dec. 637, 639 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988). *See Reyes v. Ashcroft*, 358 F.3d 592, 597−99 (9th Cir. 2004). Nor has he presented a "clear and obvious case of ineffective assistance of counsel," as provided under Ninth Circuit law. *Castillo-Perez v. INS*, 212 F.3d 518, 526 (9th Cir. 2000) ("*Lozada* is intended to ensure both that an adequate factual basis exists in the record for an ineffectiveness complaint and that the complaint is a legitimate and substantial one."). However, even if there had been substantial compliance, the respondent has not shown that his first attorney's performance was deficient. *See Matter of B-B-*, 22 I&N Dec. 309, 310−11 (BIA 1998).

Contrary to the respondent's assertions, prior counsel was aware that the respondent is the beneficiary of an approved visa petition. But since his priority date was not current and no visa was immediately available to him, the respondent was not eligible to adjust his status. Furthermore, administrative closure would not have been warranted because of the

remote availability of a visa and the speculative nature of the respondent's ability to adjust his status, particularly in light of his false testimony and criminal history. *See Matter of Avetisyan*, 25 I&N Dec. 688, 696 (BIA 2012).

In addition, we reject the respondent's assertion that his prior counsel was ineffective because he did not discover or disclose the respondent's complete criminal history. The respondent admitted that he misrepresented his criminal history to his first attorney, who stated that the respondent had only informed him of the 2009 offense. The responsibility for the respondent's false testimony, and its consequences, therefore rests on his own shoulders.

We find no merit to the other arguments the respondent raised in his motion regarding his ineffective assistance claim. Therefore, because the respondent has not established that prior counsel's performance was deficient or that it adversely affected the outcome of the proceedings, we find no basis for remanding. *See Lianhua Jiang v. Holder*, 754 F.3d 733, 741 (9th Cir. 2014) (finding no denial of due process where the alleged violation did not affect the outcome of the proceedings); *Maravilla Maravilla v. Ashcroft*, 381 F.3d 855, 857−58 (9th Cir. 2004) (per curiam) (stating that prejudice must be shown to prevail on a due process claim based on ineffective assistance of counsel).

Finally, although the respondent claims that he is now eligible for additional relief from removal, he has neither submitted an application nor established prima facie eligibility for any such relief. *INS v. Doherty*, 502 U.S. 314, 323 (1992) (stating that a motion to reopen is properly denied when a prima facie case for the relief sought has not been established); *Matter of Coelho*, 20 I&N Dec. 464. Accordingly, the respondent's motion will be denied.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** The motion to remand is denied.