# Matter of M-C-C-, Respondent

*Decided by Board December 2, 2025*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The respondent willfully misrepresented a material fact by omitting reference to his military service during the Bosnian War on his refugee application because the omission cut off a line of inquiry that predictably would have disclosed facts relevant to his eligibility for refugee status.

(2)  The respondent did not warrant a discretionary grant of a fraud waiver under section 237(a)(1)(H) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(H) (2024), based on his repeated and long-term misrepresentations regarding his military service during the Bosnian War and his lack of remorse.

FOR THE RESPONDENT:  Milva V. Lehm, Esquire, Phoenix, Arizona

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Jennifer Wiles, Senior Attorney

BEFORE: Board Panel: MALPHRUS, Chief Appellate Immigration Judge; MULLANE, Appellate Immigration Judge.  Concurring and Dissenting Opinion:  MCCLOSKEY, Temporary Appellate Immigration Judge.

MULLANE, Appellate Immigration Judge:

The parties have filed cross-appeals with this Board.  *See Lopez v. Garland*, 60 F.4th 1208, 1212–13 (9th Cir. 2023).  The respondent, a native of the former Republic of Yugoslavia and citizen of Bosnia-Herzegovina, appeals from the Immigration Judge's June 28, 2013, decision sustaining the charge of removability under section 237(a)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(A) (2012).  The Department of Homeland Security ("DHS") appeals the Immigration Judge's March 13, 2019, decision granting the respondent's request for a waiver of inadmissibility under section 237(a)(1)(H) of the INA,

---

[1]  Pursuant to Order No. 6580-2026, dated January 9, 2026, the Attorney General designated the Board's decision in *Matter of M-C-C-* (BIA Dec. 2, 2025), as precedent in all proceedings involving the same issue or issues.  *See* 8 C.F.R. § 1003.1(g)(3) (2025).  Editorial changes have been made consistent with the designation of the case as a precedent.

8 U.S.C. § 1227(a)(1)(H).[2]  The parties' respective motions to increase the page limit are granted.  The respondent's motion to accept the reply brief is granted.  The respondent's appeal will be dismissed.  The DHS' appeal will be sustained, and the respondent will be ordered removed from the United States.

The background of these proceedings involves the Bosnian War, which "was a civil conflict arising from the dissolution of the former Yugoslavia." *Matter of D-R-*, 25 I&N Dec. 445, 451 (BIA 2011), *remanded on other grounds sub nom. Radojkovic v. Holder*, 599 F. App'x 646 (9th Cir. 2015).  "It was fought from 1991 to 1995 between the ethnic Serb-dominated Republic of Srpska and the Federation of Bosnia-Herzegovina, which was dominated by Bosnian Muslims." *Id.*  The Republic of Srpska's military during this conflict was called the Vojna Republika Srpska ("VRS").  It is undisputed that the respondent served in the VRS during the Bosnian War and did not include this information in documents relating to derivative refugee status and adjustment of status.

The respondent entered the United States in 1998 as a derivative refugee on his wife's refugee application.  In 2001, his status was adjusted to that of a lawful permanent resident, retroactive to his refugee admission date.  DHS later placed the respondent in removal proceedings, charging him with removability under section 237(a)(1)(A) of the INA, 8 U.S.C § 1227(a)(1)(A), alleging that he was inadmissible at the time of entry or adjustment of status for being an alien who "by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under [the INA]."  INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i) (2024).  DHS also alleged that the respondent was inadmissible at the time of entry or adjustment of status for lacking the documents required under section 212(a)(7)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I).  While DHS amended its specific allegations several times, the basis for these allegations was that the respondent misrepresented 1) his VRS service during the Bosnian War, including during the 1995 Srebrenica massacre, and 2) his residence in Bosnia at the time he completed his derivative refugee forms.

After several extensive hearings, the Immigration Judge issued a detailed decision finding the respondent removable on the allegations relating to

---

[2]  The Immigration Judge incorporated the earlier 2013 decision into the 2019 decision by reference.

military service.[3]  In a subsequent decision, the Immigration Judge granted the respondent's request for a waiver under section 237(a)(1)(H) of the INA, 8 U.S.C. § 1227(a)(1)(H).

The Immigration Judge's first decision ably summarizes the voluminous evidence of record, and we recount relevant portions for the sake of clarity. The parties do not meaningfully contest the historical background of the Srebrenica genocide, where VRS forces in July 1995 killed thousands of Bosnian Muslim men and boys while forcibly expelling thousands of women and children from the Srebrenica area.  The parties, however, do contest the respondent's role in this massacre.

DHS presented evidence that the respondent served in the Seventh Infantry Battalion, Fourth Infantry Company of the First Zvornik Infantry Brigade on or about July 1995.  In July 1995, the Seventh Battalion was located directly west of the town of Zvornik.  During this time, a column of Bosnian Muslims would have engaged the Seventh Battalion and other VRS units as they tried to escape Srebrenica.  A DHS expert testified that the Seventh Battalion would have seen significant combat and engaged in sweep operations.  Vehicle records for the Seventh Battalion reflect that Bosnian Muslim prisoners were transported but were never later accounted for.  That expert stated there was broad evidence that Bosnia Muslims were summarily executed wherever they were found.  However, this expert did not know the respondent's precise role.

This expert elsewhere categorized three groups of persons who did not disclose their VRS service.  The first group are a select few who had a direct role in criminal acts.  The second group are individuals who aided and abetted persecutory acts, such as assisting in the separation or burial of victims.  The third and most common group were those who, at a minimum, did not disclose their military service because they believed such disclosure would result in the denial of their applications.

The respondent testified that during the events of July 1995, he was providing rear defense in a trench.  He denied having any contact with Bosnian Muslims during this time and denied hearing anything about the atrocities in and around Srebrenica at that time, although he learned about them later.  He claims to have only fired his rifle to shoot at animals.  The respondent's expert agreed that parts of the Seventh Battalion of the First

---

[3]  The Immigration Judge found that the respondent's misrepresentations about his residence in Bosnia were not material, as they would not disqualify him from derivative refugee status.  DHS has not appealed this particular conclusion but does not concede that the misrepresentations were nonmaterial.

Zvornik Infantry Brigade were involved in combat operations and sweep operations to find Bosnian Muslims. That expert also opined that the respondent's account of manning a defensive trench was consistent with the tactical situation of the time, as there were fears that the Bosniak army facing the Zvornik brigade would conduct offensive operations against them. The respondent's expert also opined that the respondent (based on the respondent's testimony) would not have been involved in war crimes such as the guarding, transportation, mistreatment, burial, or reburial of Bosnian Muslims.

On appeal, the respondent argues that the Immigration Judge erred in finding him removable as charged. DHS argues that the Immigration Judge clearly erred in finding the respondent testified credibly. DHS further argues that the respondent is neither statutorily eligible for a section 237(a)(1)(H) waiver nor warrants a grant of a waiver in the exercise of discretion.

We first address the respondent's removability. In determining whether an alien's misrepresentation is "material" under section 212(a)(6)(C)(i) of the INA, 8 U.S.C. § 1182(a)(6)(C)(i), we apply the "natural tendency" test, which is drawn from the Supreme Court's decision in *Kungys v. United States*, 485 U.S. 759 (1988). *Matter of D-R-*, 27 I&N Dec. 105, 113 (BIA 2017) ("*Matter of D-R- II*"). "Specifically, we will consider whether the misrepresentation tends to shut off a line of inquiry that is relevant to the alien's admissibility and that would predictably have disclosed other facts relevant to his or her eligibility for a visa, other documentation, or admission to the United States." *Id.*

The Immigration Judge found that the respondent's omission of service in the VRS during the Bosnian War was a material omission. We affirm this determination of materiality for the reasons stated in the decision. The Immigration Judge did not clearly err in crediting expert testimony that refugee and adjustment of status adjudicators were trained to look for prior military service—particularly military service during the Bosnian War. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2025). The Immigration Judge found an admission of military service would open a line of inquiry about the nature of that military service and that such additional inquiry could lead to a variety of outcomes, from finding that no bar applied to an affirmative finding that the applicant engaged in persecution, extrajudicial killing, or genocide. The omission of such service thus cuts off a line of inquiry that predictably would have disclosed relevant facts.

The respondent on appeal argues extensively that his omission cannot be material because he was never ineligible for refugee status or adjustment of

status in light of the true facts he claimed to have established. Materiality can be satisfied if "the alien is excludable on the true facts." *Matter of Bosuego*, 17 I&N Dec. 125, 127 (BIA 1979, 1980). However, this theory is not the exclusive method of establishing materiality. The Immigration Judge's reasoning persuasively shows how the respondent's omission shut off a line of inquiry that would "predictably have disclosed other facts relevant to his . . . eligibility for a visa, other documentation, or admission to the United States." *Matter of D-R- II*, 27 I&N Dec. at 113; *see also Matter of Bosuego*, 17 I&N Dec. at 127 (holding that a misrepresentation is material if it tends to shut off a relevant line of inquiry that *might* have altered the outcome of the proceeding).

This determination, however, does not end the inquiry. In *Matter of D-R- II*, we reaffirmed our determination "that after the DHS meets its burden of proof, the burden shifts to the alien 'to establish that no proper determination of inadmissibility could have been made." 27 I&N Dec. at 113 (quoting *Matter of Bosuego*, 17 I&N Dec. at 131). The Immigration Judge found that the respondent did not satisfy this standard. In so deciding, he found no need to question the respondent's credibility or sincerity. The Immigration Judge found that the record was ambiguous as to whether the respondent's VRS service would have disqualified him from refugee status. According to the Immigration Judge, the respondent could not carry his burden of proof on this ambiguous record. We agree with this reasoning and affirm it. We thus will dismiss the respondent's appeal.

We next turn to DHS' arguments about the respondent's credibility. In his initial decision, which addressed removability and the respondent's 2012 testimony about his VRS service, the Immigration Judge did not make an explicit credibility finding and found it unnecessary to question the respondent's credibility. In his second decision, which addressed the relief from removal and the respondent's testimony about his life and family in the United States, the Immigration Judge made a positive credibility finding. However, in this second decision, the Immigration Judge found it more likely than not that the respondent was not involved in any crimes in the area of Zvornik. Specifically, the Immigration Judge cited expert opinion that the respondent was not involved in any crimes near Zvornik, an opinion which was premised on the credibility, accuracy, and persuasiveness of the respondent's own testimony. The Immigration Judge further stated that the respondent credibly testified about not participating in genocide.

Even if we assume that the Immigration Judge made a positive credibility finding about the respondent's 2012 testimony, we need not reach the relatively narrow question of whether that finding is clearly erroneous. *See*

*INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."). We assume that the respondent's 2012 and 2019 testimony was credible.

Regarding the respondent's request for a section 237(a)(1)(H) waiver, DHS raises several arguments regarding the respondent's statutory eligibility. However, we need not rule on these arguments. *See id.* Under de novo review, even if statutorily eligible, the respondent does not warrant this waiver as a matter of discretion. *See* 8 C.F.R. § 1003.1(d)(3)(ii).

In exercising discretion under section 237(a)(1)(H) of the INA, 8 U.S.C. § 1227(a)(1)(H), we are not limited in the factors that we may consider in determining whether relief should be granted. *See INS v. Yueh-Shaio Yang*, 519 U.S. 26, 30 (1996); *Matter of Tijam*, 22 I&N Dec. 408, 416 (BIA 1998). "[W]hether to exercise discretion favorably necessitates a balancing of an alien's undesirability as a permanent resident with the social and humane considerations present . . . ." *Matter of Tijam*, 22 I&N Dec. at 412. Adverse factors that may be considered include "the nature and underlying circumstances of the fraud or misrepresentation involved; the nature, seriousness, and recency of any criminal record; and any other additional evidence of the alien's bad character or undesirability as a lawful permanent resident." *Id*. at 412; *see also id*. at 417 (holding that the statute was intended to afford relief to an alien whose equities outweighed both the initial fraud and other fraud arising from that initial fraud). Favorable factors include "family ties in the United States; residence of a long duration in this country, particularly where it commenced when the alien was young; evidence of hardship to the alien or his family if deportation occurs; a stable employment history; the existence of property or business ties; evidence of value and service to the community; and other evidence of the alien's good character." *Id*. at 412–13.

Even if the respondent's 2012 testimony were credible, there is no dispute that the respondent made numerous misrepresentations about his VRS service and wartime residency. These misrepresentations occurred in his derivative refugee application. They were made under oath during his refugee interview. They also occurred in his adjustment of status application. He continued to obscure and misrepresent his wartime experience during his subsequent interviews with investigators.

These misrepresentations occurred over many years and numerous forums. "Truthful testimony and disclosures are critical" to the operation of immigration laws, and there is a fundamental duty to tell the truth.

*Matter of Gomez-Beltran*, 26 I&N Dec. 765, 768 (BIA 2016). The respondent admitted that he knowingly excluded his VRS service in his derivative refugee application because he thought he would not have been able to move to the United States if he included it. This lengthy history of dishonesty plainly cuts against the respondent's claim for a discretionary waiver.

When confronted with the VRS service that he did not disclose, the respondent then repeatedly tended to obscure or minimize that service. When interviewed in 2005 after his arrest on immigration charges, the respondent was confronted with evidence of his VRS service, but he said that he did not remember in which military he served. The respondent untruthfully said that his service lasted 3 years, ending before the Srebrenica massacre occurred. The respondent was more forthcoming during his 2012 testimony, but that testimony occurred only after DHS presented extensive documentation and expert testimony disclosing the respondent's true service in the VRS.

The respondent also testified that he held no rank in the VRS. However, this is inconsistent with independent evidence contained in the record. DHS presented multiple VRS documents indicating the respondent was, in fact, a corporal. These rosters were used throughout the war, undercutting the respondent's testimony that they merely contained leftover information from when he served in the Yugoslavian Army. Ultimately, even if this testimony was credible, in that the respondent subjectively believed by 2012 that he held no rank, such testimony is not sufficiently persuasive in light of the conflicting documentary evidence. *Cf. Garland v. Ming Dai*, 593 U.S. 357, 372 (2021) ("It's not always the case that credibility equals factual accuracy, nor does it guarantee a legal victory."). It also does not inure to the respondent's benefit in the discretionary context when assessing the nature of his misrepresentations and his explanations for them.

Significant aspects of the respondent's claim are not persuasive. The respondent told DHS agents in 2005 that he did not know about the Srebrenica massacre. He gave cursory and evasive statements to DHS officials, noting that some people say one thing and some people say another and whatever happened in Srebrenica happened there. He stated that he was unaware that thousands were killed or that the VRS was responsible for the massacre. He testified in 2012 that he was not familiar with the Srebrenica massacre and only learned about it later from media sources. He denied any personal knowledge of war crimes during this time.

The DHS' expert testified that by July 12, 1995, it was becoming common knowledge that prisoners would be executed. Moreover, people began turning a blind eye to opportunistic killings. As the killings increased, so too did the circle of knowledge of such killings. As noted, portions of the respondents' battalion were involved in significant combat operations and sweep operations. VRS leadership was unable to limit the spread of news of the killings, as killing thousands and forcibly dispelling more takes significant manpower demands. The respondent's testimony that he remained in a trench shooting at animals, all while remaining ignorant of the nearby murder and ethnic cleansing of thousands of Bosnian Muslims (some of which was committed by comrades in the same battalion), is unpersuasive at best. His statements years later still downplaying his knowledge of a highly publicized and notorious massacre and genocide are flatly unpersuasive.

The respondent also misrepresented his wartime residency. While the Immigration Judge found that this misrepresentation was not material, it remains relevant in measuring the nature of the misrepresentation for discretionary purposes. On both his derivative refugee application and adjustment of status application, the respondent omitted his residence in Bosnia from 1992 to approximately 1996. In his derivative refugee application, he untruthfully said he was displaced from Bosnia in 1992.

The respondent testified that he lived in Sepak, Bosnia from 1992 until approximately 1993. VRS records reflect that he lived there for the entire war. At some point in 1993, the respondent's family moved to Serbia, but the respondent would cross back and forth between Bosnia and Serbia.

The respondent also invoked his Fifth Amendment right against self-incrimination during his testimony regarding questions relating to the content of his derivative refugee and adjustment of status applications and the process in which they were acquired. Standing mute when asked highly relevant questions about possible involvement in a genocide can warrant an adverse inference. *See Gutierrez v. Holder*, 662 F.3d 1083, 1091 (9th Cir. 2011); *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 154 (1923) ("There is no provision which forbids drawing an adverse inference from the fact of standing mute."). We draw an adverse inference in the context of our discretionary judgment. Such an inference is appropriate here, given the respondent's years-long history of denying and then minimizing his VRS service. These falsehoods were made repeatedly in the context of seeking immigration benefits, and a subsequent invocation of the Fifth Amendment should not inure to the respondent's benefit in assessing

whether he warrants the administrative grace of a discretionary grant of a section 237(a)(1)(H) waiver.

Here, the respondent's repeated and long-term misrepresentations concealed the respondent's involvement in an armed force that committed a notorious massacre and ethnic cleansing of Bosnian Muslims. They are a significant negative discretionary factor, and the Immigration Judge did not sufficiently account for it. Even if the respondent's later testimony was credible, it does not necessarily follow that the respondent warrants a grant of administrative grace. The respondent should have fully disclosed his past so that immigration officers could have evaluated at the outset a claim that involves service in the VRS.

We also note that the Immigration Judge did not find that the respondent was remorseful. The respondent's appellate arguments do not mention any remorse as a positive factor. The respondent has not contested that he made misrepresentations (but does contest their materiality). The insufficient evidence regarding remorse for these misrepresentations is a negative discretionary factor.[4]

We have considered the respondent's substantial positive equites, including the credible 2019 testimony about his life and family in the United States. We give full weight to the respondent's longtime residence, family ties, assets, and employment in the United States. The respondent is also elderly, which might cause additional hardship upon his removal. While the interests of family unity are important, the respondent's misrepresentations about his VRS service (in the context of notorious war crimes and genocide) ultimately outweigh the positive equities.[5] *See generally Reid v. INS*, 420 U.S. 619, 630 (1975) (discussing a fraud waiver under former section 241(f) of the INA, 8 U.S.C. § 1251(f) (1970), and noting that the waiver was limited to aliens "whose fraud was of such a nature that it was more than counter-balanced by after-acquired family ties"). Accordingly, the following orders will be entered.

**ORDER:** The respondent's appeal is dismissed.

---

[4]   Even if the respondent is presently remorseful, we would still deny the application in discretion, as that remorse is insufficient to tip the discretionary balance.

[5]   Even if we assume that the respondent was not involved in these atrocities, it does not follow that he warrants a section 237(a)(1)(H) waiver in light of his misrepresentations.

**FURTHER ORDER:** The DHS' appeal is sustained, and the Immigration Judge's March 13, 2019, decision is vacated.

**FURTHER ORDER:** The respondent is ordered removed from the United States to Bosnia-Herzegovina.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* INA § 274D, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2025). Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than two years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a) (2024).

*CONCURRING AND DISSENTING OPINION:* Paul A. McCloskey, Temporary Appellate Immigration Judge

I respectfully concur in the majority's result. However, I would reach the issue of credibility and find that the respondent was not a credible witness in 2012. "It has been held that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Matter of R-S-H-*, 23 I&N Dec. 629, 637 (BIA 2003) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). We may not overturn a factual finding merely because we would have weighed the evidence differently or decided the facts differently had we been the factfinder. *Id.*.

The Immigration Judge did not give any reasoning as to why the respondent's 2012 testimony was credible. He did not expressly weigh the numerous factors that undercut the respondent's credibility. It is well established that an Immigration Judge must provide "provide specific and cogent reasons" to support a credibility finding." *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010) (citation omitted).

To find the respondent's 2012 testimony credible, I would have to dismiss all his prior misrepresentations and minimizations of service in the Zvornik Brigade and accept that he finally told the full truth in 2012, despite his refusal to respond to relevant questions regarding those same misrepresentations. I would have to accept his claim that he was a low-ranking conscript, despite documentary evidence that he was a corporal. I would have to accept his claim that he was in a defensive position completely unrelated to the nearby atrocities, despite evidence that his battalion was involved in those atrocities. And, I would have to accept that the respondent's repeated lies about his service in the Bosnian War, or even his presence in Bosnia at the time, were unrelated to any act that the respondent participated in or observed. Thus, I would have to make every inference in the respondent's favor, all while discounting or minimizing contrary evidence and while the respondent refuses to respond to questions regarding his many misrepresentations. I do not have the confidence to make such inferences, and I have no confidence in the persuasiveness of the respondent's testimony. Under the totality of the circumstances, I have a definite and firm conviction that the respondent's 2012 testimony is not worthy of belief.

I thus concur in the dismissal of the respondent's appeal regarding deportability. I further concur in sustaining DHS' appeal and would deny the section 237(a)(1)(H) waiver in the exercise of discretion.