**Lulezim CAPO, Petitioner,**

v.

**John ASHCROFT, Respondent.**

No. 03–3755.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 15, 2004.

Decided Jan. 19, 2005.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

John L. Sesini, Milwaukee, WI, for Petitioner.

George P. Katsivalis, Department of Homeland Security Office of the District Counsel, Chicago, IL, for Respondent.

Before BAUER, COFFEY, and SYKES, Circuit Judges.

## ORDER

Albanian citizen Lulezim Capo petitions for review of a Board of Immigration Appeals order denying his application for asylum and withholding of removal. The immigration judge rejected Capo's claims because he found that Capo was not credible and had therefore failed to carry his burden of proof. Because the IJ's credibility determination is supported by substantial evidence, we deny Capo's petition.

Capo, a native of Pogradec, Albania, left Albania for Greece in May 2000 and arrived in Boston two weeks later. He did not possess valid entry documents when he was admitted to the United States so the INS commenced removal proceedings against him. Capo conceded removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture, claiming that he suffered political persecution at the hands of the Communist government.

At his removal hearing Capo related his involvement in the Democratic Party and his resulting persecution by the Communist government between 1997 and 2000. In 1997 he said masked men assaulted him and a friend on their way home from a Democratic Party meeting, beating them with guns, destroying their Democratic Party membership cards, and threatening them with death if they returned to the area. In 1998 police falsely arrested him when he was returning home from a speaking engagement at a Democratic Party meeting. They did not charge him with any crime, but held him for three days and beat him. Months later, returning home from another Democratic Party meeting, Capo said several men with machine guns shot at him and his uncle Dashamir. Though Capo escaped physically unharmed, Dashamir died of bullet wounds. Months later, on his way to meet with detectives assigned to investigate the murder, a vehicle forced him to stop in the middle of the road. Four men emerged from the vehicle and threatened to kill him if he talked to the police. In 1999 the police informed him that they could not guarantee his protection and suggested that he flee Albania. Nevertheless, he

remained in the country and helped complete a memorial to a deceased Democratic activist. Some days after finishing the memorial, he awoke to the sound of broken glass and found a deactivated grenade wrapped in a letter threatening to "finish the job that we started on May 24th," the day Capo said he and Dashamir were attacked. Capo fled Albania six months later.

To support his testimony, Capo submitted several documents obtained for him by family members in Albania. To prove he was an active member of the Democratic Party, he submitted a membership card and two "certificates" attesting to his party membership and activities. To prove that he and his uncle were persecuted for their political activities, he submitted several documents, including a letter from the Pogradec police station and two newspaper articles. Finally, Luan Ademaj, an Albanian national, testified that he had witnessed Capo and Dashamir participate in various Democratic Party activities.

The IJ rejected all of Capo's claims, concluding that Capo was not credible. The IJ relied on unexplained discrepancies between Capo's testimony and the documents he submitted. Most importantly, the IJ doubted Capo's testimony because he believed Capo had deliberately submitted forged documents. The IJ also found that some of the documents cast doubt on Capo's claimed political activities. For example, Capo admitted that the photograph on his Democratic Party membership card was taken in the United States and mailed to Albania in order to procure the card. Capo also submitted a "certificate" that he conceded appears to have been altered by pen to reflect that he was active in the party until 2000 rather than 1997. The translation he submitted reflects only the latter date.

The IJ held that Capo "failed to meet his burden of establishing the events as he claims they occurred in Albania." Exercising his discretion, however, the IJ granted voluntary departure. Capo appealed to the BIA, which "streamlined" the case and affirmed the IJ's order without opinion.

On appeal Capo disputes the adverse credibility determination, arguing that the IJ erred in denying his asylum claim because the testimonial and documentary evidence he submitted established that he was persecuted for his political activities. He contends that the IJ's contrary finding was erroneous because the IJ "inflated the significance of minor discrepancies" between his testimony and supporting documentation.

Where the BIA summarily affirms the IJ's decision, we treat the IJ's decision as that of the BIA for purposes of review. *Georgis v. Ashcroft,* 328 F.3d 962, 966–67 (7th Cir.2003). We review an IJ's adverse credibility determination under the substantial evidence standard and uphold it if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Ahmed v. Ashcroft,* 348 F.3d 611, 615 (7th Cir.2003). To withstand scrutiny, the IJ's credibility determination must be supported by "specific, cogent reasons" that "bear a legitimate nexus to the finding." *Krouchevski v. Ashcroft,* 344 F.3d 670, 673 (7th Cir.2003). An IJ must evaluate the credibility of an applicant's testimony and evidence. *Capric v. Ashcroft,* 355 F.3d 1075, 1086 (7th Cir.2004). The testimony of a credible applicant can satisfy his burden even without any corroborating evidence. *Id.* If the applicant does submit evidence to corroborate his testimony, however, and the IJ finds it inconsistent with the other evidence, the applicant cannot meet his burden of proof without accounting for the

discrepancies. *Id.* In other words, if the IJ determines that some of the applicant's documents conflict with his testimony, the burden effectively shifts to the applicant to provide an explanation.

The IJ's adverse credibility determination is supported by substantial evidence. In his oral decision the IJ cited no less than ten discrepancies between Capo's testimony and his documents, many of which Capo could not explain. Though Capo correctly asserts that some of these discrepancies are "minor," others go to the heart of his claim. *See Ceballos–Castillo v. INS,* 904 F.2d 519, 520 (9th Cir.1990) (minor inconsistencies will not support an adverse credibility finding, but discrepancies involving the "heart of the asylum claim" will). First and foremost, the IJ stated that he believed Capo had deliberately submitted forged documents. He noted at the hearing that many of the documents appeared to be prepared on the same typewriter. Indeed, four of the original untranslated documents submitted by Capo—one from the "Youth Forum of the Democratic Party" dated 2001, one from "Ministry of Public Order, Police Station, Pogradec" dated 1999, and two from the "Democratic Party, Pogradec Branch" dated 1997 and 2001—all appear to have been produced on a typewriter with the same defect, a misaligned "O" key. The IJ was entitled to consider this in assessing Capo's credibility.[1] *See Yongo v. INS,* 355 F.3d 27, 34 (1st Cir.2004) (fraudulent documents are relevant to applicant's overall credibility); *Akinmade v. INS,* 196 F.3d 951, 955–56 (9th Cir.1999). Furthermore, Capo admitted that the photographs on his birth certificate and Democratic Party membership card were taken in the United States and mailed to Albania in order to procure those documents. Capo also submitted a document that, he agreed, appears to have an altered date, making it seem that he was active in the Democratic Party longer than the certificate originally reflects. When asked to explain, Capo first suggested that his two-and-one-half-year-old nephew had written over the date, but later withdrew that suggestion, recognizing that his nephew was too young to have done so. The IJ properly considered this discrepancy as well as Capo's implausible explanation in assessing his credibility. *See Yongo,* 355 F.3d at 34.

The petition for review is DENIED.

---

1. We recently held in *Kourski v. Ashcroft,* 355 F.3d 1038 (7th Cir.2004), that it is not always proper to discredit an asylum applicant's entire testimony solely because he submitted false documents. But *Kourski* does not help Capo because in that case we held that the submission of a fraudulent birth certificate could not be used to discredit an applicant who was unaware that the document was invalid. *Id.* at 1039. In this case, however, the IJ stated that he believed Capo himself had falsified his corroborating documents.