# Matter of O-M-O-, Respondent

*Decided January 8, 2021*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An Immigration Judge may find a document to be fraudulent without forensic analysis or other expert testimony where the document contains obvious defects or readily identifiable hallmarks of fraud and the party submitting the document is given an opportunity to explain the defects.

FOR RESPONDENT: Kamah Gueh-Thoronka, Esquire, Woodbridge, Virginia

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jorge L. Montesino, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, Deputy Chief Appellate Immigration Judge; PETTY, Appellate Immigration Judge; MORRIS, Temporary Appellate Immigration Judge.

MALPHRUS, Deputy Chief Appellate Immigration Judge:

In a decision dated December 19, 2019, an Immigration Judge denied the respondent's application for deferral of removal pursuant to 8 C.F.R. §§ 1208.16(c), 1208.17(a), and 1208.18(a) (2019), the regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"), and she ordered him removed from the United States. The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Nigeria who was admitted to the United States on May 20, 2011, as a nonimmigrant visitor. On October 24, 2012, his status was adjusted to that of a conditional permanent resident. The respondent was convicted on August 8, 2014, of conspiracy to commit mail, wire, and bank fraud, a Federal offense for which he was sentenced to 63 months of imprisonment. On the same day, he was convicted of aiding and abetting aggravated identity theft in violation of Federal law and was

sentenced to 24 months in prison.  The loss, or potential loss, to the victims of each offense was greater than $10,000.  The respondent's conditional permanent resident status was terminated on June 14, 2017, with an effective date of October 25, 2014.  The Department of Homeland Security ("DHS") initiated removal proceedings, charging that the respondent is removable because his conditional permanent resident status was terminated and his offenses were aggravated felonies and crimes involving moral turpitude.

In proceedings before the Immigration Judge, the respondent admitted the factual allegations in the notice to appear, conceded removability, and applied for deferral of removal under the Convention Against Torture.  In support of his application, he testified and reported in his declaration that while he was attending college in Nigeria, he became active in the Committee for Defense of Human Rights ("CDHR").  According to the respondent, he and others in the group met with government officials in Oyo State's education ministry to try to increase the funding for education and improve conditions for students and lecturers.  He claimed that, as a consequence of his activism, the Nigerian State Secret Service detained, interrogated, and physically mistreated him in 2005, and again in 2010.

During cross-examination by counsel for the DHS, the respondent was questioned about his familiarity with the Commissioner for Education, whose purported signature appears on a December 2009 letter that the respondent submitted in support of his application and referenced in his declaration.  The DHS submitted impeachment evidence indicating that a different person was serving as Commissioner for Education at that time.  The respondent was also asked about how he obtained a "wanted" flier he had submitted into evidence, and he was given the opportunity to explain why "Nigeria" was misspelled and the signature and text were printed over a seal on the document.  At the end of the hearing, the Immigration Judge gave each party additional time to submit closing statements.  The respondent also submitted rebuttal evidence, which was admitted into the record and considered by the Immigration Judge.

The Immigration Judge found that the respondent was not credible.  She therefore determined that he had not presented a valid claim or established his eligibility for deferral of removal under the Convention Against Torture.  The respondent challenges that finding on appeal.  We have reviewed the Immigration Judge's findings of fact, including her credibility findings, to determine whether they are "clearly erroneous" under 8 C.F.R. § 1003.1(d)(3)(i) (2020), and we will affirm her adverse credibility finding.

## II.  ANALYSIS

Credibility findings must be based on the totality of the circumstances and all relevant factors, including:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

Section 240(c)(4)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1229a(c)(4)(C) (2018).  The United States Court of Appeals for the Fourth Circuit, in whose jurisdiction this case arises, has stated that "omissions, inconsistent statements, contradictory evidence, and inherently improbable testimony are appropriate bases for making an adverse credibility determination." *Djadjou v. Holder*, 662 F.3d 265, 273 (4th Cir. 2011).  The statute "provides an [Immigration Judge] with ample discretion in assessing credibility," although an adverse credibility finding must be based on the totality of the record—not a selective reading of certain facts, evidence, or inconsistencies to support a particular result. *Ilunga v. Holder*, 777 F.3d 199, 207 (4th Cir. 2015).

### A.  Fraudulent Documents

The Immigration Judge found that the respondent's credibility was undermined, primarily, but not exclusively, by his submission of two documents that she determined were falsified.  The Immigration Judge first considered the "wanted" flier submitted by the respondent.  She noted that "Nigeria" was misspelled (as "Nageia Police Authority") and that the signature and text of the flier were printed *over* the seal on the document, "as if the flier was printed on paper with the seal and signature already on it instead of the flier being stamped with the seal and signed after it was created."  The Immigration Judge found that the "wanted" flier was fabricated.  She is qualified to make that judgment because the indicia of fraud, namely, the misspelling of "Nigeria" and the "peculiar setting of the text, signature, and seal," are readily apparent on the face of the document.

The circuit courts have rejected a determination that a document is not genuine if the Immigration Judge's suspicions were speculative, particularly

where the respondent's testimony was otherwise found credible. *See, e.g.*, *Niang v. Mukasey*, 511 F.3d 138, 147 (2d Cir. 2007). In some circumstances, forensic analysis or other expert testimony may be needed to support an Immigration Judge's determination that a document is fraudulent. *See Kumar v. Gonzales*, 444 F.3d 1043, 1050 (9th Cir. 2006) (reversing an Immigration Judge's finding that a death certificate was fraudulent based on his own "uninformed visual comparison" of handwriting on an asylum application with handwriting on the certificate without evidence from a forensic handwriting expert); *see also Camishi v. Holder*, 616 F.3d 883, 888 (8th Cir. 2010) (discussing the importance of forensic evidence to support the Immigration Judge's finding of fraud); *Lin v. Gonzales*, 434 F.3d 1158, 1163 (9th Cir. 2006) (rejecting an Immigration Judge's finding of fraudulent documentation but recognizing that such a finding may rest on judicial expertise, so long as "such expertise [is] articulated on the record so that . . . the [Immigration Judge's] determinations are based on objective criteria particularized to the document").

"However, forensic evidence of fraud is not necessary where, as here, the documents bore readily identifiable indications of fraud." *Onsongo v. Gonzales*, 457 F.3d 849, 854 (8th Cir. 2006); *see also Bropleh v. Gonzales*, 428 F.3d 772, 777 (8th Cir. 2005) (stating that an Immigration Judge's finding that the applicant had altered his passport "did not require a forensic expert" where the passport had been selectively burned in an area where evidence of a visa application would be found). Courts have long recognized that Immigration Judges may find that documents are not genuine if they contain "hallmarks of fraud," which include misspellings, overwriting, incorrect information, and alterations.[1] *Onsongo*, 457 F.3d at 854 (upholding the Immigration Judge's finding that the applicant's "corroborating evidence was not credible because it bore hallmarks of fraud"); *see Selami v. Gonzales*, 423 F.3d 621, 625–26 (6th Cir. 2005) (stating that the fraudulent nature of a newspaper article was readily apparent from a comparison of its typeface, spacing, and capitalization with a copy of the original); *see also Diallo v. Mukasey*, 508 F.3d 451, 453–55 & n.2 (8th Cir. 2007) (finding that the Immigration Judge reasonably concluded that an identity card was false where it appeared to have been altered to coincide

---

[1]　The Immigration Judge took administrative notice of a report by the Office of Inspector General for the Department of Health and Human Services, which lists as "obvious" signs of fraudulent documents "erasures, smudges, white-out, misspelled words, offset margins, poor seals, dates that do not match, [and] photocopies." Office of Inspector Gen., U.S. Dep't of Health and Human Servs., 0EI-07-99-00570, *Birth Certificate Fraud* 11 (Sept. 2000), https://oig.hhs.gov/oei/reports/oei-07-99-00570.pdf.

with information on a birth certificate that a government investigation had determined was forged).[2]

The circuit courts have also affirmed findings of fraud where an applicant has submitted documents that were purportedly created by different persons or organizations but have very close similarities to each other. *See Capo v. Ashcroft*, 119 F. App'x 823, 826 (7th Cir. 2005) (upholding an adverse credibility finding based on the Immigration Judge's belief that four documents the applicant had submitted from three different organizations were deliberately forged, because they all appeared to have been produced on a typewriter with the same defect, a misaligned "O" key); *cf. Matter of R-K-K-*, 26 I&N Dec. 658, 661 (BIA 2015) (concluding that an Immigration Judge may rely on similarities between statements submitted by applicants in different proceedings in making an adverse credibility determination).

The Immigration Judge properly relied on the obvious defects or hallmarks of fraud to find that the "wanted" flier the respondent submitted was fraudulent. She gave the respondent an opportunity to explain the defects at his merits hearing when the DHS counsel raised the issue and questioned him about the document.[3] The Immigration Judge also gave both parties additional time after the merits hearing to file a closing statement.

The arguments in the respondent's brief, that Nigerians commonly call Nigeria "Nageia" and that signatories generally sign what is already printed, are not evidence. *See Matter of J.J. Rodriguez*, 27 I&N Dec. 762, 765–66 (BIA 2020) (noting that statements by counsel are not evidence and are not entitled to evidentiary weight); *Matter of S-M-*, 22 I&N Dec. 49, 51 (BIA 1998) (stating that "statements in a brief . . . are not evidence and thus are not entitled to any evidentiary weight"). Even if the respondent had shown

---

[2] The Sixth Circuit has also issued several unpublished decisions that support our approach in this case. *Sultana v. Holder*, 350 F. App'x 59, 64 (6th Cir. 2009) (noting that the Immigration Judge "was clearly within his authority to analyze the authenticity of the letter" that he found to be unreliable because of inconsistencies between the handwriting in the letter and on the envelope and in the spelling of the sender's name, as well as the fact that it was written in the English language, which the applicant struggled to read); *Sy v. Gonzales*, 199 F. App'x 444, 448–49 (6th Cir. 2006) (per curiam) (upholding an adverse credibility finding where one set of documents that a forensic examiner found fraudulent was compared to a second set, which the Immigration Judge said had "dissimilarities obvious even to the Court's untrained and naked eye," and the Sixth Circuit deemed to have an "obviously fake appearance").

[3] If the DHS had challenged the authenticity of the document and the defects were not obvious, or if the Immigration Judge otherwise determined that forensic analysis was warranted, she could have required the DHS to seek forensic analysis or provide expert testimony.

that "Nageia" is a colloquialism, this is insufficient to establish that the misspelling would be used in an official document. The Immigration Judge also considered the respondent's explanation that he was unaware of the defects in the "wanted" flier but found it unpersuasive.[4] *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); *Dankam v. Gonzales*, 495 F.3d 113, 122 (4th Cir. 2007) (stating that the Immigration Judge was "entitled to reject [the applicant's] explanation" even though it was "perfectly plausible"); *Matter of Y-I-M-*, 27 I&N Dec. 724, 726–27 (BIA 2019) (stating that the Immigration Judge is not required to "adopt an applicant's explanation for an inconsistency if there are other permissible views of the evidence").

The Immigration Judge also found that a December 2009 letter purportedly signed by the Commissioner for Education, Oyo State, was fraudulent. The DHS provided reliable impeachment evidence that the person who signed the letter did not become Commissioner for Education until November 2010 and that a professor held that position at the time of signing. The pertinent DHS evidence consists of a listing of current and past Commissioners for Education published by the Oyo State Government on its official website; the professor's curriculum vitae, published on his personal website, confirming that he served as the Commissioner for Education from April 2009 to October 2010; and a November 25, 2010, article from the Daily Trust announcing that the Oyo State Government had appointed him to be the new Commissioner for Education after the person who signed the letter was appointed as Minister for Special Duties. The evidence that the individual who signed the letter as Commissioner for Education did not hold that position until 11 months later was sufficient to show that the letter was fabricated without the need for forensic analysis. *See, e.g.*, *Bropleh*, 428 F.3d at 776–77 (affirming a finding of fraud based on a 1994 memorandum stating that the applicant was guilty of treason against the government of "President Charles Taylor," who became president in 1997).

At the merits hearing, the respondent was questioned about the letter and was given the opportunity to respond to the impeachment evidence. He submitted an affidavit as rebuttal evidence, which purported to be from the statistics officer in the Oyo State Ministry of Education. It explained that the professor was on assignment to understudy the Minister of Special Duties in 2009, and that the person who signed the letter was assigned to the office of the Commissioner for Education and was only publicly announced as the Commissioner in 2010, when the professor was confirmed as the Minister

---

[4]  Although the respondent refers to an article attached to his appellate brief, no such article was received. In any event, we do not consider evidence submitted for the first time on appeal. *See Matter of Kronegold*, 25 I&N Dec. 157, 162 (BIA 2010).

for Special Duties.  The affidavit was not accompanied by a reliable form of identification to verify that the affiant is, in fact, the statistics officer.  Nor does it indicate whether he was the statistics officer 9 years earlier, during the transition, or identify the source for his information.[5]

The Immigration Judge's finding that the "wanted" flier and letter are falsified pieces of evidence is not clearly erroneous.  The evidentiary anomalies on the "wanted" flier are apparent on the face of the document, and the DHS impeachment evidence shows that the individual who purportedly signed the December 2009 letter as Commissioner of Education did not hold that office at the time the letter was signed.  The respondent submitted this evidence to establish key elements of his claim under the Convention Against Torture, but he failed to provide a convincing explanation for the obvious inconsistencies or sufficient rebuttal evidence, despite having the opportunity to do so.  It was reasonable for the Immigration Judge to conclude that the respondent was aware this evidence was fabricated.  *See Matter of Y-I-M-*, 27 I&N Dec. at 728.

## B.  Eligibility for Relief

The respondent has the burden of establishing his eligibility for relief. Sections 240(c)(4)(A), (B) of the Act.  However, by submitting fabricated evidence, he "compromised the integrity of his entire claim."  *Matter of O-D-*, 21 I&N Dec. 1079, 1084 (BIA 1998); *see also, e.g.*, *Siewe v. Gonzales*, 480 F.3d 160, 170 (2d Cir. 2007) (noting that "a single false document . . . may . . . infect the balance of the alien's uncorroborated or unauthenticated evidence"); *Ambroise v. Gonzales*, 411 F.3d 932, 933 (8th Cir. 2005) (per curiam) (affirming an adverse credibility finding where the applicant "submitted fraudulent documents relating to a core asylum issue [and] failed to provide a satisfactory explanation for having done so").

The immigration court system has no more solemn duty than to provide refuge to those facing persecution or torture in their home countries, consistent with the immigration laws.  However, "[t]ruthful testimony and disclosures are critical to the effective operation of the immigration court system."  *Matter of Gomez-Beltran*, 26 I&N Dec. 765, 768 (BIA 2016).

---

[5]   Although it is not necessary to our decision, we also note that (1) no contemporaneous evidence was produced to show that the person signing the letter was performing the duties of the Commissioner for Education during the relevant time period; (2) the December 2009 letter does not use the title of "Acting" Commissioner for Education; and (3) the November 25, 2010, article regarding his appointment as Commissioner for Education states that "[u]ntil his appointment, [he] was the Commissioner for Industries, Applied Science [and] Technology."  *See Matter of Pineda*, 20 I&N Dec. 70, 73 (BIA 1989) (stating that the most persuasive evidence presented was "documentary evidence which was contemporaneous with the events in question" (citation omitted)).

Those who present false testimony or evidence to manufacture a claim can raise doubts about the validity of legitimate claims and unfairly undermine confidence in a system that "depends on the alien's fundamental obligation to tell the truth." *Id.*

In addition to the fabricated evidence, the Immigration Judge considered the respondent's claim that members of the CDHR were persecuted, and she found that it was inconsistent with an affidavit from an expert, which the respondent submitted in support of his claim. She also considered the respondent's convictions for crimes involving fraud, which further undermined his credibility. *Unuakhaulu v. Gonzales*, 416 F.3d 931, 938 (9th Cir. 2005) (upholding the Immigration Judge's ruling that corroborating evidence was needed because the applicant's conviction for fraud undermined his credibility); *see also Mocevic v. Mukasey*, 529 F.3d 814, 817 (8th Cir. 2008) (per curiam) (finding that the Immigration Judge's adverse credibility finding was supported by the record, including the applicant's conviction, which "involved stealing and not being truthful"). The Immigration Judge properly determined that the respondent lacked credibility and did not establish the validity of his claim. *See Matter of J-Y-C-*, 24 I&N Dec. 260, 266 (BIA 2007).

The respondent also did not meet his burden to prove his eligibility for deferral of removal under the Convention Against Torture. *See Matter of Y-I-M-*, 27 I&N Dec. at 732; *Matter of M-S-*, 21 I&N Dec. 125, 129 (BIA 1995). Because the respondent lacked credibility regarding the underlying basis for his claim, the Immigration Judge properly determined that he did not demonstrate a likelihood that he will be tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Matter of J-C-H-F-*, 27 I&N Dec. 211, 218 (BIA 2018) (quoting 8 C.F.R. § 1208.18(a)(1)). We will therefore affirm the Immigration Judge's decision to deny the respondent's request for deferral of removal. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* Section 274D of the Act, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2020).